# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ETHAN ACEVEDO, <br><br> Plaintiff, <br> v. <br><br> SERGEANT TOMASZ ZATORA, in his individual capacity, and the CITY OF CHICAGO, an Illinois municipal corporation, <br><br> Defendant. | Case No. <br><br> Judge <br><br> **JURY TRIAL REQUESTED** |

## VERIFIED COMPLAINT OF ETHAN ACEVEDO

Plaintiff Ethan Acevedo, by and through his attorneys, Mauck & Baker, LLC, complains against Sergeant Tomasz Zatora of the Chicago Police Department in his individual capacity and against the City of Chicago, an Illinois municipal corporation, as follows:

### NATURE OF THE CASE

1. A young man preached on the sidewalk. He used a microphone and amplifier.

2. Police told him he was not allowed to use the amplifier.

3. They showed him the ordinance that supposedly forbade what he was doing.

4. He read the ordinance out loud into his microphone.

5. The police had been mistaken: the ordinance permitted amplification.

6. The police stopped him from reading any further.

7. They arrested him.

8. The First and Fourth Amendment were meant to guard against this happening. Now it is up to this Court to right the wrongs the young man suffered.

**JURISDICTION AND VENUE**

9. This civil rights action raises federal questions under Amendments I and IV to the United States Constitution and under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10. This Court therefore has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

11. This action is also brought under Article I of the Illinois Constitution and the Illinois Religious Freedom Restoration Act ("RFRA"), 775 ILCS 35/1 *et seq*.

12. Because Ethan's state law claims involve the same parties and arise from the same incident as his federal claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

13. This Court has authority to award the requested damages and injunctive relief pursuant to 28 U.S.C. § 1343, 42 U.S.C. § 1983, and FED. R. CIV. P. 65, and costs and attorneys' fees under 42 U.S.C. § 1988.

14. Additionally, this Court has authority to grant damages, injunctive relief, and attorneys' fees under the Illinois RFRA, 775 ILCS 35/20.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the facts and events giving rise to Plaintiffs' claims occurred in this judicial district.

## THE PARTIES

16. Plaintiff Ethan Acevedo is a senior at Moody Bible Institute, where he is preparing to work full time in ministry as a faithful follower of Jesus.

17. Ethan regularly engages in evangelistic outreach, speaking with Chicagoans about Christian religion and its import for them and the public at large.

18. Ethan is motivated by a sincerely held religious belief to share a message of hope and help for women with unwanted pregnancies and for their unborn children, and to inform them that there are good alternatives to abortion.

19. Defendant Tomasz Zatora, (☆1125) is a sergeant of the Chicago Police Department. He is referred to as Sgt. Zatora hereinafter.

20. Defendant City of Chicago ("the City") is a municipal corporation located in Cook County, Illinois.

## FACTUAL BACKGROUND

21. Planned Parenthood operates a facility at 1200 N. LaSalle Drive, a half mile from Moody Bible Institute. (Ex. 1). This facility will be referred to here as "Planned Parenthood" or "the facility."

22. The following facts are taken from body-worn camera ("bodycam") footage of Sgt. Zatora, Officer Garren (☆6970), Officer Watson (☆9688), and Officer Flaster

(☆15498), provided to Plaintiff's counsel by the City, as well as from bodycam footage recorded by one of Ethan's associates, Mario Navarro.

23. Timestamps in Mr. Navarro's footage are approximately 58 minutes behind actual time. For example, Ethan was arrested at 10:27 a.m., for which time Mr. Navarro's camera shows 9:29 a.m. Times noted in this complaint account for this difference.

24. All video footage cited herein is attached to this Complaint via the Northern District of Illinois's Digital Media Exhibit Submission website. For simplicity, citations to video Exhibits refer to time elapsed (e.g. 1:11) since the beginning of the video (0:00), as opposed to time of day.

25. Words spoken by individuals recorded in bodycam footage are reproduced here as exactly as can be discerned from footage and is not paraphrased where in quotes.

### I. BEFORE POLICE ARRIVED – 8:51 A.M. UNTIL 9:19 A.M.

26. On March 30, 2024, at 8:51 a.m., Ethan together with his wife Mekayla and five Moody students (collectively, "the Group" or "the Moody Group") came to the vicinity of 1200 and 1201 N. LaSalle Drive to engage with the public on the religious, social, and political ramifications of abortion. Several members of the Group wore cameras on their bodies and recorded audio and video.

27. Throughout the events of this Complaint, Ethan stood on the public sidewalk near the mentioned addresses, except when he crossed the street from 1200 N. LaSalle to 1201 N. LaSalle.

4

28. From the time Ethan and his companions arrived until Ethan's arrest, the Group's discourse with the public was peaceful. Though some members of the public threatened aggression towards Ethan's friends, none of the Moody Group spoke threats or acted aggressively in response.

29. At 9:07 a.m., a member of the Group (not Ethan) stood across the street from Planned Parenthood at 1201 N. LaSalle Drive and began speaking via amplifier. (Ex. 2 at 1:11).

## II. POLICE ARRIVAL, BEGINNING OF ETHAN'S SPEECH

30. CPD officers arrived at 9:19 a.m. and began interacting with the Moody Group and Planned Parenthood escort volunteers. (Ex. 2, 13:01). Police showed no interest in the amplified speech and did not comment on it. Since the Moody Group's arrival, twenty-eight minutes have passed without incident.

31. The Group continued engaging with the public while police stood nearby and occasionally talked with the Moody Group, the Planned Parenthood volunteers, or members of the public. Officer Hardy (☆12385) advised and directed various members of the Group to stay clear of the Planned Parenthood entrance. (Ex. 3 at 6:53–8:54).

32. At 9:53 a.m., Ethan crossed the street to 1201 N. LaSalle Drive and took over the microphone from his friend. (Ex. 4 at 2:04). He began speaking over the amplifier, also concerning the religious, social, and political ramifications of abortion. (Ex. 4 at 3:17).

33. More than half an hour had passed since the police's arrival. Throughout that time, amplified speech could be heard from across the street. Throughout that time,

5

police never remarked on it nor gave any other indication that it had drawn their attention.

### III. SGT. ZATORA'S FIRST INTERACTIONS WITH THE MOODY GROUP

34. Sgt. Zatora first interacted with the Moody Group at 9:57 a.m., about half an hour after police had first appeared on scene. (Ex. 5 at 1:55, Ex. 4 at 6:17).

35. After introducing himself to a member of the Group (not Ethan), Sgt. Zatora stated "I understand you are exercising your First Amendment rights," and then explained, albeit imprecisely, Chicago's bubble zone ordinance, Chi., Ill., Code § 8-4-010(j)(1), and that the Group should not hand flyers to people. The individual he spoke with respectfully disagreed about the legality of handing out flyers. (Ex. 5 at 2:20–4:00).

36. Sgt. Zatora continued speaking with that individual, stating "I've seen you guys before; it usually doesn't last longer than an hour" but that "the only problem with that is the megaphone is loud, and you guys don't have a permit for this—" to which the individual answered "We don't need a permit, sir, especially if it's under a certain decibel threshold." (Ex. 5 at 4:00–4:32). In response to an invitation to measure the decibel level of the amplified sound, Sgt. Zatora stated that the officers lacked the tools to do so. (Ex. 5 at 4:32–4:48). This appears to be the first time that amplification volume was raised by anyone, police or otherwise, since the Group's arrival an hour before.

37. At 10:01 a.m., Sgt. Zatora walked several yards away from the Group and stood facing the Group. (Ex. 5 at 5:50). He was eventually joined by Officer Garren. (Ex. 5 at 7:20, Ex. 6 at 5:40).

38. After a few moments of silence, Sgt. Zatora said to Officer Garren "We are causing more problems by being here." (Ex. 5 at 7:33, Ex. 6 at 5:56). For an unknown (and presumably unrelated) reason, an elderly woman tripped and fell very near the officers just as Sgt. Zatora spoke. The officers immediately called an ambulance.

39. At 10:03 a.m., Sgt. Zatora departed the scene to return to his squad vehicle, where he turned off his bodycam. (Ex. 5 at 7:53–8:41). No further footage from Sgt. Zatora's camera was seen by Plaintiff.

40. At some point between 10:03 a.m. and 10:25, Sgt. Zatora approached Ethan to tell him he had to stop speaking into the microphone.[1] Ethan asked Sgt. Zatora why he had to stop, since Ethan was certain his volume was within the bounds of the law.

41. Sgt. Zatora told Ethan that his voice amplification was in violation of the City's noise ordinance. He offered to print a copy for Ethan, which Ethan welcomed. Sgt. Zatora then left Ethan.

42. At 10:16 a.m., Sgt. Zatora can be seen in Ofc. Flaster's footage retrieving keys from Ofc. Watson and telling her "I'll be right back." (Ex. 7 at 4:04).

43. At 10:17 a.m., Ofc. Hardy gathered the remaining officers around himself a few yards north of the facility's entrance, (Ex. 7 at 5:48, Ex. 6 at 20:48), and ordered the officers to turn off their cameras, saying "We'll turn it back on in a minute. I need to

---

[1] No video footage of this interaction was available to Plaintiff. The facts here are therefore based on Ethan's testimony.

7

speak freely." (Ex. 6 at 21:01). No video or audio footage is available from that meeting.

44. Ofc. Flaster began recording video again (but without sound) around 10:24 a.m. (Ex. 8). He was standing near the facility's entrance at 1200 N. LaSalle Drive.

45. Soon thereafter, Sgt. Zatora can be seen approaching Ethan across the street from the facility. (Ex. 8 at 1:31). A minute later, Ofc. Flaster crossed the street to join Sgt. Zatora and Ethan.

46. Per Mr. Navarro's footage, at 10:25 a.m. Ethan can be heard saying "let's see the noise ordinance. Apparently, it's illegal to be doing this." (Ex. 9 at 3:48)

47. Ofc. Flaster resumed recording sound at 10:26 a.m., when he arrived next to Ethan. Ethan at that moment was reading CHI., ILL., CODE § 8-32-070[2] aloud from a piece of paper he had received from Sgt. Zatora. (Ex. 8, beginning at 1:47).

48. After Ethan finished reading subsection (a) of that ordinance and began reading subsection (b) into his microphone, Sgt. Zatora attempted to retrieve the paper from Ethan. (Ex. 8 at 2:25).

49. Ethan indicated he was not finished reading the ordinance, but Sgt. Zatora insisted that he had gone above and beyond his duty in showing Ethan the ordinance and that Ethan had to cease using the microphone. (Ex. 8 at 2:25–3:55, Ex. 9 at 5:46–6:38).

---

[2] That ordinance states in relevant part that "(a) No person on the public way shall employ any device or instrument that creates or amplifies sound, including but not limited to any loudspeaker, bullhorn, amplifier, public address system, musical instrument, radio or device that plays recorded music, to generate any sound, for the purpose of communication or entertainment, that is louder than average conversational level at a distance of 100 feet or more, measured vertically or horizontally, from the source."

50. Ethan sought clarification, but instead of answering Ethan's questions, Sgt. Zatora stepped forward and arrested him. (Ex. 8 at 3:55, Ex. 9 at 6:20).

51. Despite offering no resistance, Ethan was forcibly restrained by officers, was told to "stop resisting," and was soon shoved into a police cruiser. (Ex. 8 at 3:55-6:30).

52. No officer told Ethan why he was arrested.

53. Ofc. Hardy told Mekayla Acevedo (Ethan's wife) immediately after the arrest that her husband was arrested because he continued using amplification after being advised he could not do so without a permit. (Ex. 10 at 1:06–1:56).

54. Ethan was taken to a police station, where he was booked and then held for more than six hours before being released. No one read Ethan his rights at any time between his arrest and his release.

55. Ethan received citations for CHI., ILL., CODE § 8-32-070 "Amplified Sound" and " § 8-4-010(e) "Disorderly Conduct and summons to appear before the Circuit Court of Cook County, Branch No. 29. (Ex. 11).

56. On July 16, 2024, following a bench trial before the Honorable Donald Panarese, Ethan was found not guilty of violating ordinance 8-32-070. The other charge was dismissed for want of prosecution. (Ex. 12).

57. Ethan wishes to continue speaking with the public on the topic of abortion, but he fears being arrested again if he were to return to the Planned Parenthood at 1200 N. LaSalle and/or if he were to use amplification to speak in public anywhere in Chicago even though he is rightfully entitled to do both under the Constitution and under Illinois RFRA.

58. Ethan attempted to resolve this matter with the City before resorting to this lawsuit. (Ex. 13). The City declined to negotiate. (Ex. 14).

## COUNT I
### Violation of First Amendment Right to Freedom of Speech
### (42 U.S.C. § 1983)

59. Plaintiff incorporates all preceding paragraphs as though stated herein.

60. Religious and political speech are protected under the Free Speech Clause of the First Amendment to the United States Constitution and Article I of the Constitution of the State of Illinois.

61. The content of Ethan's speech was religious and political.

62. Ethan spoke on the public sidewalk, the most traditional public forum.

63. Ethan was entitled to use voice amplification.

64. Sgt. Zatora ordered Ethan to cease using amplification, despite lacking legal justification to do so.

65. Sgt. Zatora ultimately silenced Ethan's religious and political speech altogether by arresting him.

66. As a result of his arrest, Ethan has suffered physical, emotional, and economic harms entitling him to compensation from Sgt. Zatora and the City of Chicago.

67. He continues to suffer emotional and economic harms for which he is also entitled to compensation from Sgt. Zatora and the City of Chicago.

68. Ethan suffered irreparable harm when he was silenced by Sgt. Zatora and the other CPD officers.

69. He continues to suffer irreparable harm because his speech has been chilled by concern he will be arrested again if he were to speak out near that same Planned Parenthood and/or if he were to use amplification to speak in public anywhere in Chicago, even though he is rightfully entitled to do so both under the Constitution and under Chi., Ill., Code § 8-32-070.

## COUNT II
## Violation of Illinois RFRA

70. Plaintiff incorporates all preceding paragraphs as though stated herein.

71. Ethan's faith and his religious convictions compel him to speak with the public about abortion.

72. He needs voice amplification to be heard over the noise of Chicago streets. Without amplification, he would need to raise his voice to be understood by passersby, which would distort the tone of his message.

73. His right to freely exercise his religion is protected by 775 ILCS 35/15, which states that "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

74. Ordering Ethan to cease using amplification substantially burdened his exercise of religion.

75. There was no compelling governmental interest in preventing Ethan's use of voice amplification.

76. Ordering Ethan to cease using amplification was not the least restrictive means of furthering any governmental interest.

77. Arresting Ethan for using voice amplification substantially burdened Ethan's ability to exercise his religion.

78. There was no compelling governmental interest justifying Ethan's arrest for using voice amplification.

79. Arresting Ethan was not the least restrictive means of furthering any governmental interest.

80. 775 ILCS 35/20 provides that
> [i]f a person's exercise of religion has been burdened in violation of this Act, that person may assert that violation as a claim or defense in a judicial proceeding and may obtain appropriate relief against a government. A party who prevails in an action to enforce this Act against a government is entitled to recover attorney's fees and costs incurred in maintaining the claim or defense.

81. Ethan is therefore entitled to compensation from the Defendants for the harms he has suffered and continues to suffer as a result of being intimidated, harassed, silenced, and arrested by Sgt. Zatora and the CPD.

82. Likewise under 775 ILCS 35/20, Ethan is entitled to injunctive relief for the irreparable harm he continues to suffer because his lawful exercise of his religion has been chilled by Sgt. Zatora and the CPD.

## COUNT III
### False Arrest in Violation of the Fourth Amendment
### (42 U.S.C. § 1983)

83. Plaintiff incorporates all preceding paragraphs as though stated herein.

84. Sgt. Zatora had no probable cause to arrest Ethan.

85. Sgt. Zatora and other CPD officers nevertheless forcibly arrested Ethan and detained him at the police station for six hours.

86. By arresting Ethan without probable cause, Sgt. Zatora and CPD caused Ethan physical, emotional, and economic harms for which Ethan is entitled to compensation.

87. As a result of his arrest, Ethan continues to suffer emotional and economic harms entitling him to compensation from Sgt. Zatora and the City of Chicago.

### COUNT IV
### Retaliatory Arrest in Violation of the First and Fourth Amendment
### (42 U.S.C. § 1983)

88. Plaintiff incorporates all preceding paragraphs as though stated herein.

89. Sgt. Zatora illegally ordered Ethan to cease his First Amendment activity.

90. Ethan attempted to get clarification why he was being ordered to relinquish his constitutional right to speech.

91. Ethan attempted to get clarification why he was being told amplification was forbidden by Municipal Code 8-32-070 when that ordinance did not in fact forbid it.

92. Sgt. Zatora arrested Ethan for Ethan's lawful attempt to assert his rights under the Constitution and under the ordinance to use voice amplification for his speech and exercise of his religion.

93. As a result of his arrest, Ethan has suffered physical, emotional, and economic harms entitling him to compensation from Sgt. Zatora and the City of Chicago.

94. He continues to suffer emotional and economic harms for which he is also entitled to compensation from Sgt. Zatora and the City of Chicago.

95. Ethan suffered irreparable harm when he was silenced by Sgt. Zatora and the other CPD officers. He continues to suffer irreparable harm because he now reasonably fears that police may arrest him for legally and justifiably asserting his rights under the Constitution and Chicago ordinance.

96. Ethan is entitled to a preliminary and permanent injunction to safeguard his rights.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Ethan Acevedo respectfully requests that this Court enter judgment against Defendants and provide Plaintiff the following relief:

A. Declare that Ethan Acevedo has the right, consistent with Chi., Ill., Code § 8-32-070, to use voice amplification on the sidewalk in front of 1201 N. LaSalle Drive, Chicago, Illinois, without a permit;

B. Preliminarily and permanently enjoin Sgt. Zatora and the City through its employees, agents, or representatives from arresting Ethan Acevedo when he speaks using voice amplification not exceeding 85 decibels measured at any distance from the Planned Parenthood facility entrance at 1200 N. LaSalle Drive, Chicago, Illinois;

C. Compensatory damages for violation of Plaintiff's First Amendment and Fourth Amendment rights and for violation of Plaintiff's rights under the Illinois RFRA, including damages arising from his harassment, intimidating, and forcible arrest by Sgt. Zatora and other officers of the Chicago Police Department;

D. Nominal damages;

E. Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 775 ILCS 35/20;

F. Such other relief as this Court deems appropriate.

Respectfully submitted,

ETHAN ACEVEDO,
Plaintiff,

/s/ *Robin Rubrecht*

One of his attorneys

John W. Mauck (1797328)
Robin J. Rubrecht (6340970)
**MAUCK & BAKER, LLC**
1 N. LaSalle St. Suite 3150
Chicago, IL 60602
312-726-1243
jmauck@mauckbaker.com
rrubrecht@mauckbaker.com
Attorneys for Plaintiff

## **DECLARATION UNDER PENALTY OF PERJURY**

      I hereby declare under penalty of perjury that this Verified Complaint is true and correct

Date: 12 / 02 / 2024

*Ethan Acevedo*
_____
Ethan Acevedo

Doc ID: 800f50eec6f006e8f3833fcaafc86a0d4cd93ab1