IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ETHAN ACEVEDO,<br><br>    Plaintiff,<br>  v.<br><br>SERGEANT TOMASZ ZATORA, in his individual capacity, and the CITY OF CHICAGO, an Illinois municipal corporation,<br><br>    Defendant. | Case No. 1:24-cv-12654<br><br>Judge:<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S MOTION FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff Ethan Acevedo, by and through his attorneys, Mauck & Baker, LLC, respectfully moves this Court to enter an Order granting him a preliminary and permanent injunction as well as declaratory judgment against Sgt. Zatora and the City of Chicago to prevent further violations of his constitutional rights under the First and Fourth Amendments and under the Illinois Religious Freedom Restoration Act.

### INTRODUCTION

1. Ethan was arrested while speaking publicly about abortion on a sidewalk across the street from a Planned Parenthood facility. The reason given for his arrest was that he was using voice amplification without a permit. Cmpl. at ¶¶ 45–53.

2. Because there was in fact no requirement for such a permit, he was arrested without legal justification.

1

3. CHI., ILL., CODE § 8-32-070 is referenced throughout this motion, which reads:

(a) No person on the public way shall employ any device or instrument that creates or amplifies sound, including but not limited to any loudspeaker, bullhorn, amplifier, public address system, musical instrument, radio or device that plays recorded music, to generate any sound, for the purpose of communication or entertainment, that is louder than average conversational level at a distance of 100 feet or more, measured vertically or horizontally, from the source.

(b) Between the hours of 10:00 p.m. and 8:00 a.m., no person on any private open space shall employ any device or instrument that creates or amplifies sound, including but not limited to any loudspeaker, bullhorn, amplifier, public address system, musical instrument, radio or device that plays recorded music, to generate any sound, for the purpose of communication or entertainment, that is louder than average conversational level at a distance of 100 feet or more from the property line of the property from which the noise is being generated.

(c) The limitations imposed in this section do not apply between the hours of 8:00 a.m. and 10:00 p.m. to a person participating in: (1) a public assembly, as that term is defined in Section 10-8-334[1]; or (2) a parade, athletic event, or outdoor special event, as defined in Sections 10-8-330, 10-8-332, or 10-8-335 of this Code; provided that a permit has been issued for the parade, athletic event or outdoor special event, if required, and the person is in compliance with the permit. . . .

4. As can be seen in the ordinance, there is no absolute prohibition against amplification, nor is there a permit requirement except for the limited—and here not applicable—circumstances outlined in subsection (c).

5. Subsection (a) allows amplified sound on Chicago's public streets and sidewalks without a permit, provided that the volume is "not louder than average

---

[1] Chi., Ill., Code § 10-8-334
(a) . . . "Public Assembly" means a company of persons collected together in one place on the sidewalk, or any organized march or procession of persons upon the sidewalk, which is reasonably anticipated to interfere with or impede the flow of pedestrian traffic, but will not: (i) obstruct the normal flow of vehicular traffic, or (ii) require a street closing or otherwise require police officers to stop or reroute vehicular traffic because the persons will not or cannot comply with normal and usual traffic regulations or controls. . . .

conversational level at a distance of 100 feet or more, measured vertically or horizontally, from the source."

6. Yet Police never asked Ethan to lower his volume. He was arrested for his use of amplification *per se* when Sgt. Zatora decided he should stop. Cmpl. at ¶¶ 40–42, 45–53.

7. The First and Fourth Amendments forbid arresting someone for mere speech, and 42 U.S.C. § 1983 provides remedies when the government so oversteps its constitutional limits.

8. Citizens of Illinois are further shielded from their government's burdening their practice of religion by the Illinois Religious Freedom Restoration Act ("RFRA"), 775 ILCS 35/1 *et seq*.

9. Despite these protections, and despite Ethan's compliance with CHI., ILL., CODE § 8-32-070, Sgt. Zatora together with several officers of the Chicago Police Department ("CPD") arrested him for speaking over an amplifier on a public sidewalk.

10. Ethan suffered the traumatic experience of being forcibly and publicly arrested, Cmpl. at ¶¶ 50–53. He wants to return to the same location on LaSalle Street, but he reasonably fears he will be arrested again if he were to speak with conversational-level amplification within hearing distance of that same Planned Parenthood facility. Cmpl. at ¶¶ 57. Thus, his speech at that location has been effectively and illegally prohibited.

11. This Court must enjoin that prohibition so that Ethan can resume exercising

3

his rights under the Constitution and Illinois's RFRA.

## FACTS

12. The facts alleged in Plaintiff's Complaint are incorporated by reference in this motion.

## LEGAL STANDARD

13. The grant of a preliminary injunction is subject to the Court's discretion. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). A preliminary injunction is properly granted when "it is reasonably likely [the movant will] succeed on the merits, [the movant] is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." *Id.*

> In First Amendment cases, once a likelihood of success on the merits has been established, irreparable harm necessarily follows. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (*per curiam*) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). As to the public interest, an injunction protecting First Amendment rights is always in the public interest. *Christian Legal Soc'y*, 453 F.3d at 867.

*Pride v. City of Aurora*, No. 23-CV-00259, 2023 WL 3569130, at *21 (N.D. Ill. May 18, 2023) (internal quotation marks omitted).

14. "[T]he moving party bears the burden of showing that a preliminary injunction is warranted," *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018), but the City "bears the burden of proving the constitutionality of restrictions on speech, including at the preliminary-injunction stage." *Chicago All. Against Racist & Pol. Repression v. City of Chicago*, No. 24-CV-02347, 2024 WL 3791478, at *5 (N.D.

4

Ill. Aug. 12, 2024) (internal quotation marks, citation omitted).

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE LIKELY TO SUCCEED ON THE MERITS.

15. Though the legal theories (free speech, Illinois RFRA/free exercise, false arrest, retaliatory arrest) for Ethan's claims entail proof of different elements, they all arise from a central message that Sgt. Zatora and the officers under his command impressed upon Ethan when they intimidated and then arrested him.

16. Ethan was coercively educated that even though CHI., ILL., CODE § 8-32-070 allows amplification without a permit, absent judicial protection, it is the police who effectively determine his right to speak in public with an amplifier—not the municipal code .

17. Common sense suggests that Ethan was silenced because he preached against abortion, a controversial viewpoint that rouses strong feelings in many who disagree with it. However, the Court need not delve into the merits of that viewpoint to find that Ethan's freedom to use voice amplification requires shielding by a preliminary injunction. It suffices that Sgt. Zatora and the other officers:

   a. told Ethan that he needed a permit to use voice amplification when § 8-32-070 clearly says he does not (Cmpl. at ¶¶ 36, 53);

   b. ordered him to stop using voice amplification without offering a legal justification (Cmpl. at ¶ 40); and

   c. arrested Ethan when he tried to get clarification why he had to stop using voice amplification (Cmpl. at ¶¶ 50, 51).

18. By way of Ethan's complaint and the video footage attached to it, all the facts

the Court needs to justify granting Ethan the equitable relief he seeks are already before the Court. The footage speaks for itself, allowing the Court to base its decision on direct, contemporaneous evidence.

### a) Plaintiff's free speech claim is likely to succeed on the merits.

#### 1. His right to free speech was violated.

19. Footage shows that the content of Ethan's speech was religious and political, for which reason his speech was unquestionably protected under the First Amendment. Cmpl. at ¶ 32; all video footage after 9:53 a.m. until Ethan's arrest.

20. The time, place, and manner of his speech were also clearly lawful because § 8-32-070(a) allowed his use of an amplifier on the public way, and there was no objective evidence that he had exceeded the volume limit of that ordinance. Ethan was also not asked to lower his volume, further evincing his arrest was contrary to law.

21. Ethan spoke on a public sidewalk, a traditional public forum under *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37, 45 (1983). Cmpl. at ¶ 27.

22. Sgt. Zatora and the other CPD officers were obviously state actors because they were dressed as police officers, identified themselves as such, drove CPD-marked vehicles, and acted in their capacity as police officers.

23. The officers forbade Ethan's use of voice amplification and claimed that they were enforcing the law, thereby acting under color of law; they arrested Ethan, too, under color of law.

24. Thus, Ethan can establish that state actors arrested him for his legally protected speech.

### 2. Sgt. Zatora and the other officers are not entitled to qualified immunity for Ethan's arrest.

25. Though qualified immunity from suit for damages is no bar to equitable relief, it is discussed here because its analysis further clarifies Ethan's right to relief and the Defendants' culpability.

26. Whether an officer's act falls outside qualified immunity is analyzed by a conjunctive test: 1) Viewed in the light most favorable to the complaining party, was there a violation of a constitutional right? 2) If so, was that right clearly established? Where both questions are answered in the affirmative, the police's actions fall outside qualified immunity. *Surita v. Hyde,* 665 F.3d 860, 868 (7th Cir. 2011). Judges may for economy's sake choose which question to answer first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

27. The violation of Ethan's rights under the Constitution and the Chicago ordinance was twofold. First, the officers illegally forbade him the manner of his speech, saying he could not use amplification. Secondly, Ethan was arrested for his speech despite its legality. Thus, viewed in the light most favorable to the complaining party, there was a violation of a constitutional right, and the first part of the Seventh Circuit's *Surita* test is therefore met. 665 F.3d at 868.

28. Concerning the second part of the test, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Doe v. Heck,* 327 F.3d 492, 515 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003); *Mustafa v. City of Chicago,* 442 F.3d 544, 549 (7th Cir. 2006) ("[W]here the law is open to interpretation,

qualified immunity protects police officers who reasonably interpret an unclear statute").

29. Here, the law was clearly established: Sgt. Zatora acknowledged at various points that Ethan and his friends were exercising their First Amendment rights. Cmpl. ¶¶ 35; Ex. 8 of Cmpl. at 2:25–3:55.

30. Most importantly, **there cannot have been any confusion what the law was: Sgt. Zatora held a printed copy of the ordinance in his hands** and even heard Ethan read the relevant portion to him! § 8-32-070(a) clearly does not make the use of an amplifier contingent on a permit:

> No person on the public way shall employ any device . . . to generate any sound, for the purpose of communication or entertainment, that is louder than average conversational level at a distance of 100 feet or more, measured vertically or horizontally, from the source.

31. Because CHI., ILL., CODE § 8-32-070 explained to Sgt. Zatora that Ethan had a right to speech and speech amplification, Sgt. Zatora almost certainly knew he was breaking the law by arresting Ethan.

32. The second part of the test in *Surita*, that the violated right was clearly established, is thus met. The Defendants are therefore not protected by qualified immunity.

33. In sum, Ethan has shown both that he is likely to prevail on the merits of his free speech claim and that Sgt. Zatora is not entitled to qualified immunity here.

   b) **Ethan's RFRA claim is likely to succeed on the merits.**

34. "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that

8

application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 ILCS 35/15.

35. Because Ethan's speech was motivated by his faith (Cmpl. at ¶¶ 16–18, 71), and because without amplification he could not be heard (Cmpl. at ¶ 72), prohibiting his use of voice amplification imposes a substantial burden on his exercise of religion. *See Saia v. People of State of New York,* 334 U.S. 558, 561 (1948) ("Loud-speakers are today indispensable instruments of effective public speech").

36. Sgt. Zatora's ordering Ethan to stop using amplification without a permit is not the least restrictive means of furthering any governmental interest, while arresting Ethan ranks among the most restrictive.

37. Considering that there already is an ordinance permitting his use of voice amplification without a permit, and considering that this ordinance did not deter Sgt. Zatora and the other officers from intimidating and arresting Ethan, an injunction is necessary to permit Ethan to resume his exercise of religion without the risk that he will be arrested again. RFRA at 775 ILCS 35/20 gives the Court the authority to grant such an injunction, preliminary and permanent.

38. In light of the overlap between Ethan's RFRA claim and his First Amendment claims, the same qualified immunity analysis applies.

## II. THE REMAINING FACTORS FAVOR GRANT OF A PRELIMINARY INJUNCTION FOR ETHAN.

### a) Irreparable harm follows likelihood of success.

39. Because this case concerns Ethan's First Amendment rights, and because

"likelihood of success on the merits has been established, irreparable harm necessarily follows." *Ayres*, 966 F. Supp. at 717. Similarly, because Illinois RFRA protects religious exercise, and because Ethan has shown he is likely to succeed on the merits of his RFRA claim, irreparable harm follows here, too.

40. Because the violation of Ethan's rights to free speech and free exercise are irreparable harm, there can be no adequate remedy at law for their continued deprivation.

   b) **That Ethan will be arrested again for speech is a substantial risk.**

41. A plaintiff seeking prospective relief for free speech can "establish standing based on a *current* injury if they have resorted to self-censorship out of 'an actual and well-founded fear' that the law will be enforced against them." *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (emphasis in original) (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). The risk of prosecution is credible where a plaintiff can demonstrate that their fear is both actual and reasonable. *Brown*, 86 F.4th at 761. Courts must give "special flexibility or 'breathing space'" for standing in a First Amendment case to prevent the chilling of speech. *Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 633–34 (7th Cir.1990) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 610–12 (1973)).

42. *Admiral Theatre v. City of Chicago* is especially instructive here. 832 F. Supp. 1195, 1202 (N.D. Ill. 1993). There, police had arrested adult dancers claiming their expressive conduct was obscenity. *Id.* at 1198-99. After their release, the dancers sought an injunction against future arrest for the same conduct. *Id.* The court found

standing on two independently sufficient grounds. *Id.* at 1201-02. First, the dancers' "allegation that the police officers conducting the arrests . . . had incorrect understandings of what constituted obscenity under the Constitution" meant that the dancers' "practice of keeping their expression within the bounds of constitutionality gives them no protection against future police interference." *Id.* at 1201. Second, the court found that the dancers had standing because "[p]ast exposure to illegal conduct may establish a present case or controversy to support injunctive relief where it is accompanied by any 'continuing, present adverse effects.'" *Id.* at 1201-02 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974)). "[T]he threat of self-censorship stemming from their fear of arrest for performing constitutionally-protected expression, just as they have suffered in the past, is the type of 'continuing, adverse effect' that satisfies *O'Shea*." *Admiral Theatre,* 832 F. Supp. at 1202.

43. Another instructive case is *Santiago v. City of Chicago*, which analyzed standing for prospective relief under the more demanding standard used where free speech is not at issue. 446 F. Supp. 3d 348, 365 (N.D. Ill. 2020) (applying *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018), requiring "substantial likelihood" that the offending conduct will recur). In *Santiago,* the City had towed and impounded an elderly and disabled plaintiff's van because the City identified it as "abandoned" when it had not "been moved or used for more than seven consecutive days and [was] apparently deserted." *Id.* at 352-354, 365. The plaintiff bought a new vehicle to replace her van, but she was afraid the City would tow and impound her new vehicle because she regularly parked it "in the same manner as she parked her

11

van: in a legal spot on a public street near where she lives." *Id.* at 365. The City argued she had no standing because it was "unlikely that it will identify Santiago's new vehicle as abandoned because there is a general assumption that she will follow the law, including the City's abandoned vehicle ordinances." *Id.* Rejecting Chicago's argument, the court found that she had standing to seek injunctive relief against the City simply *because she intended to repeat the legal conduct which had motivated the City's illegal conduct*. *Id.* at 365-66.

44. Here, Ethan has standing under both the logic supporting both *Sequoia* and *Swanigan*. Ethan was arrested for legal conduct, and he is "realistically threatened by a repetition of his experience." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Like the dancers' conduct in *Admiral Theatre*, Ethan's expressive conduct was protected under the Constitution and under the applicable ordinance, but he was arrested for his speech all the same. For this reason, he needs the Court's injunctive relief to ensure he can exercise his First Amendment right. *Cf. Sequoia Books, Inc.*, 901 F.2d at 634 ("[T]he usual rule that the courts should avoid constitutional adjudication whenever possible carries less weight in the First Amendment context").

45. Sgt. Zatora knew that Ethan was exercising his First Amendment rights (Cmpl. ¶¶ 35; Ex. 8 of Cmpl. at 2:25–3:55), but Sgt. Zatora's disregard of the law meant that Ethan would enjoy "no protection against [ ] police interference" even while his conduct was legal. *Admiral Theatre*, 832 F. Supp. at 1201. Without an injunction by this Court which Ethan can carry in his backpack to show police officers, he has no assurance he can speak through an amplifier near 1200 N. LaSalle Drive

without being arrested again. He therefore has standing to seek this Court's intervention.

46. Beyond the arrest by Sgt. Zatora, Ethan's realistic fear of repeated arrest and prosecution—and therefore the chilling effect on his speech—is exacerbated by the following facts:

   a. The City's prosecuting attorney reviewed the bodycam footage but still pursued the charges and took the case to trial! Ex. 1.

   b. Before the filing of this lawsuit, the City's Department of Law was informed of the relevant facts through Ethan's demand letter and his declaration, but it refused even attempting to settle the case. Cmpl. at ¶ 58.

   c. Cook County's newly elected State's Attorney, Eileen O'Neill Burke, has announced she will create a "Choice Protection Unit," which "will be the first unit dedicated to enforcing the laws which protect women's access to abortion services and reproductive healthcare." Ex. 2 at 3. She cited an alleged increase "in Anti-Choice protesters attempting to interfere with that right," which "has already begun to ramp up in the last year, when protestors brought amplifiers and an armed guard downtown to intimidate patients and healthcare providers." Ex. 2 at 2. The mention of "Anti-Choice protesters" and "amplifiers" as justifying the creation of a new prosecutorial unit supports Mr. Acevedo's concern that the State's Attorney intends to use law enforcement to chill pro-life advocacy. *See Brown,* 86 F.4th at 761 ("self-censorship out of an actual and well-founded fear that the law will be enforced against them" provides

standing for prospective relief).

d. Police interpreting Ms. O'Neill Burke's deliberately chosen words would reasonably understand her policies as condoning arrests of peaceful speakers like Ethan because his words could be seen as "attempting to interfere with" women's right to access to abortion services, and her stated policy explicitly links the use of amplifiers to intimidation.

e. The City has a history of suppressing advocacy against abortion. Ex. 3; s*ee* *Price v. City of Chicago,* 915 F.3d 1107, 1110 (7th Cir. 2019) ("In October 2009 the Chicago City Council adopted an ordinance that effectively prohibits sidewalk counseling by banning the close approach it requires"); *Price v. City of Chicago,* No. 16-CV-8268, 2017 WL 36444, at *2 (N.D. Ill. Jan. 4, 2017), *aff'd,* 915 F.3d 1107 (7th Cir. 2019) (outlining numerous allegations of City's pattern and practice of suppressing pro-life advocacy).

47. Thus, without injunctive protection, the irreparable harm to Ethan's First Amendment freedoms continues because he fears to repeat his legally protected speech. With a proper—and narrow—injunction, this Court can facilitate a speedy resolution of this case.

48. Lastly, protecting Ethan's rights under the First Amendment and under RFRA is in the public interest. "The Supreme Court has recognized that speech concerning public affairs is more than self-expression, it is the essence of self-government." *Id.* (citing *Garrison v. Louisiana,* 379 U.S. 64, 74–75 (1964)).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ethan Acevedo respectfully requests that this Court enter an

order granting him the following:

A. Declare that Ethan Acevedo has the right, consistent with Chi., Ill., Code § 8-32-070, to use voice amplification on the sidewalk in front of 1201 N. LaSalle Drive, Chicago, Illinois, without a permit;

B. Preliminarily and permanently enjoin Sgt. Zatora and the City through its employees, agents, or representatives from arresting Ethan Acevedo when he speaks using voice amplification which does not exceed conversational level at a distance of 100 feet in the vicinity of the Planned Parenthood facility entrance at 1200 N. LaSalle Drive, Chicago, Illinois;

C. Directing the Defendants to answer or otherwise plead to Ethan's Complaint in twenty-one (21) days.

D. Such other relief as this Court deems appropriate.

Respectfully submitted

ETHAN ACEVEDO,

/s/ *Robin Rubrecht*
One of his attorneys

John W. Mauck (1797328)
Robin J. Rubrecht (6340970)
**MAUCK & BAKER, LLC**
1 N. LaSalle St. Suite 3150
Chicago, IL 60602
312-726-1243
jmauck@mauckbaker.com
rrubrecht@mauckbaker.com
Attorneys for Plaintiff