**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ETHAN ACEVEDO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 12654 |
| | ) | |
| SERGEANT TOMASZ ZATORA, in his | ) | Hon. Georgia Alexakis |
| individual capacity, and the CITY OF | ) | |
| CHICAGO, an Illinois municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE AND DECLARATORY RELIEF

ELLEN W. MCLAUGHLIN (IL 6304292)
AARON T. DOZEMAN (IL 6308909)
City of Chicago, Department of Law
Constitutional and Commercial
  Litigation Division
2 North Lasalle Street, Suite 520
Chicago, Illinois 60602
(312) 742-5147 / (312) 744-9018
Ellen.McLaughlin@cityofchicago.org
Aaron.Dozeman1@cityofchicago.org

*Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

I.  The City's Amplified Sound Ordinance And Disorderly Conduct Ordinance ....... 3

II. Acevedo Uses A Sound Amplifier On The Public Way, Refuses To Stop After Being Told It Is Too Loud, And Is Arrested.......................................................... 4

PRELIMINARY INJUNCTION STANDARD...................................................6

ARGUMENT ........................................................................................................7

I.  Acevedo's Requested Relief Does Not Comply With Rule 65(d)......................... 8

II. Acevedo Lacks Standing To Seek Prospective Relief For Future Injuries........... 10

    A.  Acevedo lacks standing to seek prospective relief for a First Amendment injury. ..................................................................................... 11

    B.  Acevedo lacks standing to see prospective relief based on IRFRA.......... 14

III. Lack Of Standing Aside, Acevedo Has Not Clearly Shown He Is Entitled To Preliminary Injunctive Relief.............................................................. 15

    A.  Acevedo has no likelihood of success on the merits of his First Amendment claims against the City and Sergeant Zatora. ...................... 16

    B.  Acevedo has no likelihood of success on the merits of an IRFRA claim. 17

    C.  Acevedo will not suffer irreparable harm without an injunction, and the balance of equities weighs against injunctive relief. ................................ 18

EXHIBITS

Exhibit 1    Google map of La Salle Drive and Division Street

Exhibit 2    Axon_Body_3_Video_2024-03-30_0957_X60AC343K

Exhibit 3    Axon_Body_3_Video_2024-03-30_1013_X60AC343K

Exhibit 4    Axon_Body_3_Video_2024-03-30_1025_X60AC343K

Exhibit 5    Report of Proceedings, *People v. Acevedo*, 24-MC1-199522 (Cir. Ct. Cook Cty., Ill.)

# TABLE OF AUTHORITIES

**Cases**

*AM Gen. Corp. v. DaimlerChrysler Corp.*,
   311 F.3d 796 (7th Cir. 2002) ............................................................... 19

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ................................................................. 2

*Burton v. City of Belle Glade*,
   178 F.3d 1175 (11th Cir. 1999) ............................................................. 9

*California v. Texas*,
   593 U.S. 659 (2021)............................................................................. 11

*Calusinski v. Kurger*,
   24 F.3d 931 (7th Cir. 1994) ................................................................. 16

*Cassell v. Snyders*,
   458 F. Supp. 3d 981 (N.D. Ill. May 3, 2020)...................................... 17

*Cassell v. Snyders*,
   990 F.3d 539 (7th Cir. 2021) ............................................................ 7, 8

*Diggs v. Snyder*,
   775 N.E.2d 40 (Ill. App. Ct. 2002) ......................................... 15, 17, 18

*Doherty v. City of Chicago*,
   75 F.3d 318 (7th Cir. 1996) ................................................................. 13

*E.E.O.C. v. AutoZone, Inc.*,
   707 F.3d 824 (7th Cir. 2013) ........................................................ 8, 9, 10

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)............................................................................. 10

*Garcia v. Kankakee Cty. Hous. Auth.*,
   279 F.3d 532 (7th Cir. 2002) ............................................................... 12

*Hispanics United of DuPage Cty. v. Vill. of Addison*,
   248 F.3d 617 (7th Cir. 2001) ................................................................. 8

*Horton v. City of Chicago*,
   No. 13 C 6865, 2018 WL 4699790 (N.D. Ill. Sept. 30, 2018)............. 18

*Ill. Republican Party v. Pritzker*,
   973 F.3d 760 (7th Cir. 2020) ................................................................. 7

*Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago,*
    56 F.4th 437 (7th Cir. 2022) ................................................................ 19

*Kovacs v. Cooper,*
    336 U.S. 77 (1949) ............................................................................. 13

*Milchtein v. Milwaukee Cty.,*
    42 F.4th 814 (7th Cir. 2022) ............................................................. 14

*Monell v. Dep't of Soc. Servs. of N.Y.,*
    436 U.S. 658 (1978) ........................................................................... 14

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ............................................................................. 10

*Petropoulos v. City of Chicago,*
    448 F. Supp. 3d 835 (N.D. Ill. 2020) ............................................... 17

*Price v. City of Chicago,*
    915 F.3d 1107 (7th Cir. 2019) ...................................................... 4, 19

*Promatek Indus., Ltd. v. Equitrac Corp.,*
    300 F.3d 808 (7th Cir. 2002) .............................................................. 2

*Simic v. City of Chicago,*
    851 F.3d 734 (7th Cir. 2017) ............................................................ 10

*Speech First, Inc. v. Killeen,*
    968 F.3d 628 (7th Cir. 2020) .............................................................. 7

*Stefanow v. McFadden,*
    103 F.3d 1466 (9th Cir. 1996) .......................................................... 15

*Stokes v. City of Madison,*
    930 F.2d 1163 (7th Cir. 1991) .................................................... 12, 16

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ........................................................................... 10

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ........................................................................... 10

*Thompson v. City of Chicago,*
    472 F.3d 444 (7th Cir. 2006) ............................................................ 12

*United States v. Julius,*
    14 F.4th 752 (7th Cir. 2021) .............................................................. 4

*Valencia v. City of Springfield, Ill.*,
    No. 16 C 3331, 2023 WL 8827687 (C.D. Ill. Dec. 5, 2023)..................................... 9

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)................................................................................... 9, 12, 16

*Waters v. City of Chicago*,
    580 F.3d 575 (7th Cir. 2009) ............................................................................. 14

*White v. Pauly*,
    580 U.S. 73 (2017).............................................................................................. 17

*Wilson v. Cook Cty.*,
    742 F.3d 775 (7th Cir. 2014) ............................................................................. 17

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).................................................................................................. 6

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972)............................................................................................ 15

**Statutes**

42 U.S.C. § 1983 ....................................................................................................... 1

775 Ill. Stat. Comp. 35/1 .......................................................................................... 1

775 Ill. Stat. Comp. 35/15 ............................................................................... 14, 17

Fed. R. Civ. P. 65(d) ................................................................................................. 7

Fed. R. Evid. 201(b).................................................................................................. 4

Defendants City of Chicago and Chicago Police Department ("CPD") Sergeant Tomasz Zatora submit this response in opposition to Plaintiff Ethan Acevedo's motion for preliminary injunctive and declaratory relief. In support, defendants state the following.

## INTRODUCTION

One Saturday morning last March, Acevedo and fellow Moody Bible Institute students stood in front of the Planned Parenthood clinic at La Salle Drive and Division Street to voice opposition to the healthcare services offered there. Acevedo crossed La Salle Drive to use an amplifier to project his voice. CPD officers heard the amplifier from across the busy intersection. They told Acevedo that he was too loud, and that without a permit for such loud amplification, he was in violation of the City's sound amplification ordinance, Municipal Code of Chicago, Ill. ("MCC") § 8-32-070. Acevedo refused to stop and was arrested and cited for violating MCC § 8-32-070, and the City's disorderly conduct ordinance, MCC § 8-4-010(e).

Acevedo argues, pointing to no supporting evidence, that his amplified volume complied with MCC § 8-32-070, and that CPD incorrectly enforced the ordinance. Based on that, he contends that defendants *ipso facto* violated his constitutional rights. This action seeks monetary and equitable relief under 42 U.S.C. § 1983 for alleged First Amendment free speech violations and under the Illinois Religious Freedom Restoration Act ("IRFRA"), 775 Ill. Stat. Comp. 35/1 *et seq.*, among other claims. Acevedo contemporaneously filed a motion for preliminary and injunctive relief, seeking a declaration that reaffirms what MCC § 8-32-070's plain terms state, and an order enjoining defendants from not following the ordinance as written.

There is no basis for the Court to order vague, broad relief, in the form of an injunction that merely directs defendants to follow the law. Acevedo has not even shown that defendants improperly enforced the sound amplification ordinance against him, let alone violated his First

Amendment or IRFRA rights. And he falls far short of demonstrating that the Court's intervention is required to prevent imminent future injury to those rights.

## BACKGROUND

Acevedo's motion for preliminary declaratory and injunctive relief relies on his verified complaint, which is largely based on "body-worn camera . . . footage" of the incident at La Salle Drive and Division Street. Dkt. 1, ¶ 22; *see* Dkt. 4, ¶ 18 ("The footage speaks for itself, allowing the Court to base its decision on direct, contemporaneous evidence."). Those videos include body-worn camera footage from Sergeant Zatora and several other officers, and video taken from one of Acevedo's fellow protestors, Mario Navarro, who also wore a body-worn camera.[1] Exhibits attached to a pleading are considered part of the pleading, and they control over conflicting factual allegations. *See Bogie v. Rosenberg*, 705 F.3d 603, 609-10 (7th Cir. 2013) (on motion to dismiss, facts from video exhibit control over allegations to the contrary). And when a pleading references evidence, like video or a document, that is "central to" plaintiff's claims, it can be incorporated into the pleading. *Id.* at 609. Accordingly, the following facts are based on the verified complaint and video of the incident, including additional videos from Sergeant Zatora's body-worn camera attached to this response. Those supplemental videos from Sergeant Zatora's camera are central to Acevedo's claims and complete the partial footage he supplied.[2]

---

[1] *See* Dkts. 1-2 (Navarro), 1-3 (Navarro), 1-4 (Navarro), 1-5 (Sergeant Zatora), 1-6 (CPD Officer Robert Garren), 1-7 (CPD Officer Flaster), 1-8 (CPD Officer Flaster), 1-9 (Navarro), 1-10 (Mekayla Acevedo).

[2] Acevedo does not ask to present additional evidence at a hearing, nor is one required. An evidentiary hearing is required if the nonmoving party raises genuine issues of material fact in response to a motion for preliminary injunction. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002). Here, defendants rely only on evidence Acevedo presented and supplemental body-worn camera video. There is no need for an evidentiary hearing for judicial resolution of disputed material facts.

# I.    The City's Amplified Sound Ordinance And Disorderly Conduct Ordinance

The City has several ordinances that regulate noise in public places, including noise from amplifiers, mechanical sources, and entertainment activities. *See* MCC §§ 8-32-070 *et seq*. The City's ordinance regulating amplified sound, MCC § 8-32-070, states in part that:

> (a) No person on the public way shall employ any device or instrument that creates or amplifies sound, including but not limited to any loudspeaker, bullhorn, amplifier, public address system, musical instrument, radio or device that plays recorded music, to generate any sound, for the purpose of communication or entertainment, that is louder than average conversational level at a distance of 100 feet or more, measured vertically or horizontally, from the source.
>
> [(b) omitted]
>
> (c) The limitations imposed in this section do not apply between the hours of 8:00 A.M. and 10:00 P.M. to a person participating in: (1) a public assembly, as that term is defined in Section 10-8-334; or (2) a parade, athletic event, or outdoor special event, as defined in Sections 10-8-330 , 10-8-332 , or 10-8-335 of this Code; provided that a permit has been issued for the parade, athletic event or outdoor special event, if required, and the person is in compliance with the permit. . . .

MCC § 8-32-070(a), (c). Thus, a person using amplified sound that is "louder than average conversational level at a distance of 100 feet or more . . . from the source," *id.* § 8-32-070(a), may only do so if he is participating in a "public assembly" or has obtained a "parade" permit, *id.* § 8-32-070(c).

The City also has an ordinance that prohibits "disorderly" conduct in public places, such as breaches of peace, causing harm, or threatening public health, safety, or welfare. *Id.* § 8-4-010. Disorderly conduct includes "fail[ing] to obey an order by a peace officer . . . issued under circumstances where it is reasonable to believe that the order is necessary to allow public safety officials to address a situation that threatens the public health, safety, or welfare." *Id.* § 8-4-010(e). MCC § 8-4-010 also creates a so-called "bubble zone" around healthcare buildings, like Planned Parenthood, by prohibiting any person from "knowingly approach[ing] another person within eight feet of such person, unless such other person consents, for the purpose of passing a

leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way within a radius of 50 feet from any entrance door to a hospital, medical clinic or healthcare facility[.]" *Id.* § 8-4-010(j)(1); *see Price v. City of Chicago*, 915 F.3d 1107, 1109 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 185 (2020) (upholding constitutionality of MCC § 8-4-010(j)(1)).

## II. Acevedo Uses A Sound Amplifier On The Public Way, Refuses To Stop After Being Told It Is Too Loud, And Is Arrested.

On March 30, 2024, Acevedo and fellow Moody Bible Institute students came to the Planned Parenthood clinic at the northwest corner of La Salle Drive and Division Street "to engage with the public on the religious, social, and political ramifications of abortion [care]." Dkt. 1, ¶ 26. At first, the group stood in front of the clinic with signs, engaged passersby and Planned Parenthood volunteers, and passed out leaflets. *Id.* ¶¶ 27, 28; *see generally* Dkts. 1-2, 1-3. Across from La Salle Drive, on the northeast corner of the intersection, one of the Moody Bible Institute students began speaking through an amplifier. Dkt. 1, ¶ 29. The amplifier's volume was loud enough to be heard over conversations among individuals standing by the clinic, *e.g.*, Dkt. 1-2 at 1:12; Dkt. 1-3 at 00:23; Dkt. 1-4 at 00:00, which was around 100 feet away, *see* Ex. 1 (Google map view of La Salle Drive and Division Street); Fed. R. Evid. 201(b); *United States v. Julius*, 14 F.4th 752, 756 (7th Cir. 2021) ("We and other courts have taken judicial notice of distance estimates from Google Maps.").

About a half an hour after the Moody Bible Institute students arrived at the Planned Parenthood, CPD officers arrived. Dkt. 1, ¶ 30, 31. After another hour or so, Acevedo began speaking over the amplifier. Dkt. 1, ¶ 32; Dkt. 1-2 at 3:19.

At 9:55 a.m., Sergeant Zatora arrived near the scene and parked in front of 1212 N. La Salle Drive, just north of the Planned Parenthood. *See* Ex. 2 at 00:00-2:00 (Sergeant Zatora's

body-worn camera). The protestor disagreed that a permit was required. Ex. 2 at 4:20-4:50. All the while, Acevedo had been speaking through the amplifier, and his voice could be heard over the conversations happening in front of the Planned Parenthood. *See* Dkt. 1-6 at 00:00-5:00; Ex. 2 at 2:00-8:41. At one point, a woman standing against the Planned Parenthood fell to the ground, and while officers attended to her, Acevedo could be heard from across the street. Dkt. 1-6 at 7:40-8:00; Ex. 2 at 7:36. While Sergeant Zatora dealt with the fallen woman and then walked north on La Salle Drive towards his squad car, Acevedo's amplifier could be heard from across the street. Dkt. 1-6 at 8:00-8:30; Ex. 2 at 7:36-8:41.

After sitting in his squad car for about 10 minutes, Sergeant Zatora exited the car onto La Salle Drive. Ex. 3 (Sergeant Zatora's body-worn camera) at 00:00-2:00. He crossed La Salle Drive and walked towards Acevedo, whose amplifier was loudly audible. *Id.* at 2:00-2:34. Sergeant Zatora told Acevedo that he could not use amplified sound that could be heard from 100 feet unless he had a permit. *See* Dkt. 1, ¶¶ 40, 42; Ex. 3 at 2:55-3:00. Acevedo asked to be shown the ordinance. Ex. 3 at 3:00-3:02. Sergeant Zatora tried to show Acevedo the ordinance on his cellphone, but Acevedo insisted that Sergeant Zatora print the ordinance out for him. *Id.* at 3:02-3:52. Sergeant Zatora agreed to do so, and as he returned to his car on the other side of La Salle Drive, Acevedo could be heard speaking through the amplifier. *Id.* at 3:52-5:12. Sergeant Zatora then drove all the way back to the police station to print out the ordinance for Acevedo's convenience. *Id.* at 5:12-6:52.

Sergeant Zatora returned to the corner of La Salle Drive and Division Street with a print-out of the ordinance. Ex. 4 (Sergeant Zatora's body-worn camera) 00:00-2:00. He handed it to Acevedo and informed him that he would be cited if he continued using the amplifier. *Id.* at 2:00-2:24. Acevedo began reading the ordinance out loud through the amplifier. *Id.* at 2:24-3:04; Dkt. 1, ¶ 49. Sergeant Zatora called out Acevedo for his continued use of the amplifier and asked

5

him not to escalate the situation; when Acevedo continued to argue and refused to stop using the amplifier, CPD officers arrested him. Ex. 4 at 3:04-4:49; Dkt. 1, ¶¶ 50, 51.

Acevedo was cited for violating MCC § 8-32-070 and § 8-4-010(e). In July 2024, at a hearing in the Circuit Court of Cook County, the City's attorney requested a continuance of the trial to allow Sergeant Zatora and another officer to attend, explaining that their testimony was necessary because they "signed the complaints" and were "critical witnesses." Ex. 5 (Tr. of Proceedings July 16, 2024, *People v. Acevedo*, No. 24-MC1-199522 (Cir. Ct. Cook Cty., Ill.) at 2:8-3:4. The court denied the request for a continuance. *Id.* at 3:11-12. The MCC § 8-32-010(e) citation for disorderly conduct was accordingly dismissed for want of prosecution. *Id.* at 3:13-4:17; Dkt. 1, ¶ 56. The hearing on the sound amplification violation proceeded based on the testimony of another officer present at the Planned Parenthood the morning of March 30, 2024, who testified that Acevedo could be heard on the amplifier from across La Salle Street, Ex. 5 at 19:20-23, even through the rolled-up windows of his squad car, *id.* at 21:6-8. Nevertheless, Acevedo was found not guilty of violating MCC § 8-32-070. *Id.* at 37:14-15; Dkt. 1, ¶ 56.

Months later, in December 2024, Acevedo filed this action. He raised First Amendment and Fourth Amendment violations under Section 1983 and a state-law claim under IRFRA. *See* Dkt. 1. Acevedo contemporaneously moved for preliminary and injunctive relief on his First Amendment speech claim and IRFRA claim. Dkt. 4.

## PRELIMINARY INJUNCTION STANDARD

A preliminary injunction "is an extraordinary remedy" that is "never awarded as of right," but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22-24 (2008). A plaintiff must establish each element of a preliminary injunction. *Id.* at 7, 20. He must show that (1) without this relief, he will suffer irreparable harm, (2) traditional legal remedies would be inadequate, and (3) he has a likelihood

of prevailing on the merits of his claims. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). On the merits, the Seventh Circuit has emphasized that demonstrating "a mere possibility of success is not enough." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Rather, "an applicant for preliminary relief bears a significant burden," which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763. If these factors are met, the irreparable harm that the moving party will suffer absent preliminary relief is balanced against the harm the non-moving party will suffer if it is granted, and the public's interest in granting or denying injunctive relief also is taken into account. *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021).

## ARGUMENT

Acevedo fails to justify the extraordinary remedy of preliminary injunctive relief. At the outset, his request is improper because the only relief he seeks is that MCC § 8-32-070 be enforced as written. But an injunction that merely tells a defendant to obey the law is too broad and vague to be enforceable and is incompatible with the requirements of Fed. R. Civ. P. 65(d). Furthermore, Acevedo does not establish that he has standing to seek prospective relief. He has not shown that his rights have been injured at all, let alone that he faces imminent injury.

Nor has Acevedo shown a likelihood of prevailing on the merits of his claims. Acevedo's case is premised on the unsupported, inaccurate assertion that he was arrested merely for using sound amplification. Dkt. 4, ¶ 6 (citing Dkt. 1, ¶¶ 40-42, 45-53). That grossly misrepresents the evidence, which shows that Acevedo was arrested because of the amplifier's *volume* — "the megaphone [was] loud." Dkt. 1, ¶ 36. Sergeant Zatora's bodycam footage shows that, at various moments over almost 90-minutes, the amplifier *was* audible above a conversational level at over 100 feet away, Dkt. 1, ¶ 41; *e.g.*, Ex. 2 at 2:00-8:41, which Sergeant Zatora informed Acevedo

violated the sound amplification ordinance. For his part, Acevedo points to no evidence to show that he complied with MCC § 8-32-070. He therefore cannot show that his arrest was improper.

But even if Acevedo had complied with MCC § 8-32-070, it does not inevitably follow that his citation and arrest violated his First Amendment and IRFRA rights. Acevedo conflates two questions: whether MCC § 8-32-070 was properly enforced, and whether his constitutional or statutory rights were violated. But local ordinances do not dictate the standard for constitutional or IRFRA violations. In other words, to prevail on his claims, Acevedo must do more than show that his arrest was a mistake; he must show that by preventing him from broadcasting on the public way near a health clinic, defendants violated his constitutional or statutory rights. He does not even make such an argument in his motion for injunctive relief and thus fails to demonstrate how he would prove the merits of his case. Accordingly, as explained below, Acevedo fails to meet his burden to show that he is entitled to a preliminary injunction.

## I. Acevedo's Requested Relief Does Not Comply With Rule 65(d).

To begin, the Court should deny Acevedo's motion because his requested injunction lacks the specificity Rule 65(d) demands. "A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell*, 990 F.3d at 544. Accordingly, Rule 65(d) requires that an injunction "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required." Fed. R. Civ. P. 65(d). "Rule 65(d) means that the parties need not guess their obligations." *Hispanics United of DuPage Cty. v. Vill. of Addison*, 248 F.3d 617, 620 (7th Cir. 2001).

The Seventh Circuit has cautioned that injunctions that merely direct a defendant to obey the law "must be evaluated with great care." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 842 (7th Cir. 2013). For example, they might be appropriate in an employment context if the employer

engaged in "proven illegal conduct" and the court believes "voluntary compliance with the law will not be forthcoming." *Id.* But absent such unique circumstances, "obey-the-law" injunctions are deemed unnecessary and unenforceable. *See Valencia v. City of Springfield, Ill.*, No. 16 C 3331, 2023 WL 8827687, at *12 (C.D. Ill. Dec. 5, 2023) (citing *AutoZone, Inc.*, 707 F.3d at 842-43) (concluding that "obey-the-law injunction" was neither "necessary" nor "equitable" and did not comply with Rule 65(d)); *accord Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (injunction that "would do no more than instruct the City to 'obey the law'. . . would not satisfy the specificity requirements of Rule 65(d) and . . . would be incapable of enforcement").

Here, Acevedo merely seeks an injunction that tells defendants to follow local law as written. To that end, he seeks a declaration that he "has the right, consistent with . . . [MCC] § 8-32-070, to use voice amplification on the sidewalk in front of 1201 N. LaSalle Drive, Chicago, Illinois, without a permit," and he wants to enjoin every City employee, including Sergeant Zatora, from arresting him "when he speaks using voice amplification which [complies with MCC § 8-32-070 in that it] does not exceed conversational level at a distance of 100 feet in the vicinity of the Planned Parenthood facility entrance . . . ." Dkt. 4 at 15.

The injunction fails to satisfy Rule 65(d) for several reasons. First, it is not premised on any finding of a First Amendment or IRFRA violation. As explained further below, regarding the First Amendment, restrictions on sound amplification are reviewed for their reasonableness based on the "time, place, and manner" of the restriction. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). IRFRA, in turn, asks whether a government action has "substantially burden[ed] a person's exercise of religion." 775 Ill. Stat. Comp. 35/15. Acevedo has not shown that defendants violated his rights under the First Amendment or IRFRA; he simply argues that defendants applied the ordinance incorrectly. Second, the requested injunction does not

"specifically" proscribe any particular "act or acts." It merely directs defendants to follow the ordinance. Yet there is no dispute as to what MCC § 8-32-070 states, and defendants do not dispute that City ordinances should be enforced as written. Third, this case does not present one of the rare situations where an "obey-the-law" injunction might be warranted. *See AutoZone, Inc.*, 707 F.3d at 842-43. Acevedo has proved no past illegal conduct, and this is not a situation where the Court's intervention is required to ensure defendants comply with the law. Defendants complied with the law. They intend to do so in the future.

The Court should deny Acevedo's requested for injunctive relief on this basis alone.

## II.     Acevedo Lacks Standing To Seek Prospective Relief For Future Injuries.

Relatedly, Acevedo fails to establish his standing to enjoin defendants' future conduct. A plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). At the preliminary injunction stage, "a plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing" to challenge a law or government action. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

In general, standing to sue requires that a plaintiff show (1) an "injury in fact," (2) that the challenged conduct caused the injury, and (3) some likelihood that a decision in his favor will remedy the injury. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). But to enjoin future conduct, as Acevedo attempts to do here, a plaintiff must show a "sufficient likelihood" that a future injury will occur. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Future injury must be "certainly impending," not merely possible, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), based on specific sworn facts, not general factual allegations of injury, *Speech First, Inc.*, 968 F.3d at 638. And "[u]nlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Where an imminent injury is

10

established, a plaintiff also must show that that it is "likely that a favorable judicial decision will prevent or redress" his alleged injuries. *Summers*, 555 U.S. at 493. That is, a court must consider whether the prospective relief requested will prevent the claimed injury. *See California v. Texas*, 593 U.S. 659, 672-73 (2021). Acevedo fails to show that he faces an impending injury to his rights that the requested injunctive relief would prevent.

**A.** **Acevedo lacks standing to seek prospective relief for a First Amendment injury.**

Acevedo argues that he has standing to seek preliminary injunctive relief based on a fear of being arrested again when he uses an amplifier. Dkt. 4, ¶¶ 41-48. This alleged fear fails to afford Acevedo standing to seek injunctive relief based on a First Amendment claim, for several reasons. First, he has not shown that the sound amplification ordinance was incorrectly enforced against him in March 2024, let alone that his First Amendment rights were violated by that enforcement. But even if he had made that showing, that incident alone would not warrant prospective relief. Acevedo falls short of demonstrating that he faces "certainly impending" injury to his free speech rights in the future absent this Court's intervention.

Acevedo's claim boils down to a disagreement with Sergeant Zatora over whether his amplified sound on the date of his arrest was "louder than average conversational level at a distance of 100 feet or more." MCC § 8-32-070(a). Anything above that level, as Sergeant Zatora correctly advised Acevedo, is allowed only as part of an approved public assembly or parade. *Id.* § 8-32-070(c). Acevedo believes his volume "was within the bounds of the law," Dkt. 1, ¶ 36, although he points to no evidence, and conspicuously does not allege, that his volume did not exceed a conversational distance from 100 feet away, *see* Dkt. 4, ¶ 20. Instead, he speculates that Sergeant Zatora arrested him simply for using an amplifier without a permit. *See* Dkt. 4, ¶ 17; Dkt. 1, ¶¶ 35, 36, 53. But the evidence shows otherwise. Sergeant Zatora's body-worn camera

captured multiple incidences where Acevedo's amplified sound was loud, audible well above the average conversational level, while Sergeant Zatora was across La Salle Drive from Acevedo. Despite Sergeant Zatora's multiple attempts to resolve the situation, Acevedo insisted on continuing to use the amplifier, in violation of a police directive. That led to his arrest. In sum, Sergeant Zatora properly enforced MCC § 8-32-070.

But even if the amplifier's volume did not violate the ordinance, and Sergeant Zatora's enforcement action was mistaken, Acevedo fails to explain why defendants committed a First Amendment violation in directing him to cease broadcasting. He merely asserts that "[t]he time, place, and manner of his speech were . . . clearly lawful because § 8-32-070(a) allowed his use of an amplifier on the public way, and there was no objective evidence that he had exceeded the volume limit of that ordinance." Dkt. 4, ¶ 20. But that confuses the scope of First Amendment rights with what is permitted under MCC § 8-32-070. "[L]ocal government does not violate the federal Constitution just because it violates a state or local law." *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002); *see also Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("this court has consistently held that '42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws'") (citations omitted). Acevedo makes no argument as to why defendants violated his constitutional rights, as opposed to incorrectly interpreting MCC § 8-32-070.

And there was no such violation. The First Amendment framework applicable to sound restrictions is that which addresses content-neutral restrictions on the time, place, and manner of speech. *See Ward*, 491 U.S. at 791. "Time, place and manner restrictions must further a substantial governmental interest, be content-neutral and leave ample alternative channels of communication." *Stokes v. City of Madison*, 930 F.2d 1163, 1170 (7th Cir. 1991). Here, limiting the volume of Acevedo's sound amplification on the public way near a health clinic furthered a

substantial interest and left him ample alternative ways to communicate his message. The City's interest in ensuring that patients can receive counseling and medical services and access care in a peaceful environment without undue disruption is a legitimate and compelling one; excessive noise could interfere with the operation of the clinic or the well-being of patients. Such interests are routinely held to justify noise restrictions. *E.g.*, *Kovacs v. Cooper*, 336 U.S. 77, 88 (1949) ("The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience."). And as the evidence shows, Acevedo was permitted to convey his message outside of the clinic through alternative means, such as with his unamplified voice and signs.

Acevedo does not contend otherwise. His "merits" argument consists of six short paragraphs which fail to apply relevant case law to the evidence. *See* Dkt. 4, ¶¶ 19-24. With such an underdeveloped First Amendment analysis, Acevedo shows no First Amendment injury at all, let alone an imminent future injury that justifies an injunction. *See Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996) (cleaned up) ("[I]t is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").

Acevedo also fails to satisfy the causation and redressability factors required for standing. As to Sergeant Zatora, he disagrees with the sergeant's application of MCC § 8-32-070 to his use of the amplifier but fails to show how that caused First Amendment injury. And besides, the evidence shows that Sergeant Zatora properly enforced the ordinance. Ordering Sergeant Zatora to comply with MCC § 8-32-070 in the future would neither redress nor prevent any constitutional injury.

As to the City, Acevedo faces a further hurdle, because he has failed to allege any basis for municipal liability under Section 1983. A municipality is not vicariously liable for a constitutional violation committed by an employee. *See Monell v. Dep't of Soc. Servs. of N.Y.*,

436 U.S. 658, 691 (1978). Rather, it is liable only for its own conduct that causes a constitutional violation, as manifested through (1) an express policy, (2) a widespread, though unwritten, custom or practice, or (3) a decision made by a final policymaker. *See Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 826 (7th Cir. 2022). Neither the complaint nor motion for preliminary injunctive relief describe any facts that suggest that a municipal policy caused Acevedo injury. The only express municipal policy mentioned in the complaint is MCC § 8-32-070, and Acevedo simply wants the Court to order the to follow that policy as written. Acevedo also does not allege that Sergeant Zatora acted pursuant to an unwritten custom or was a final policymaker, which he is not. *See, e.g., Waters v. City of Chicago*, 580 F.3d 575, 582 (7th Cir. 2009) (explaining that City Council sets policy through ordinances, and only an express grant of authority by ordinance will make a City official a final policymaker). Therefore, no City policy caused Acevedo harm, and ordering the City to comply with its ordinance would redress no injury.

For the reasons explained above, Acevedo fails to show that he has standing to request prospective relief. He has not even shown that he suffered a past violation of his First Amendment rights, so there is no basis to infer that he faces imminent injury in the future.

**B.     Acevedo lacks standing to see prospective relief based on IRFRA.**

Acevedo also has not established standing to request a preliminary injunction to prevent defendants from violating his rights under IRFRA. He has not shown that defendants violated IRFRA in enforcing MCC § 8-32-070 against him, and he therefore cannot establish any need for this Court's intervention to protect his rights under the statute in the future.

IRFRA creates a right of action against a government, subdivision, or government official that "substantially burden[s] a person's exercise of religion," "even if the burden results from a rule of general applicability." 775 Ill. Stat. Comp. 35/15. "[A] substantial burden on one's free exercise of religion is the presentation of a coercive choice of either abandoning one's religious

convictions or complying with the governmental regulation." *Diggs v. Snyder*, 775 N.E.2d 40, 44 (Ill. App. Ct. 2002) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 217-18 (1972)). "[A] plaintiff must demonstrate that the governmental action 'prevents him from engaging in conduct or having a religious experience that his faith mandates.'" *Id.* (quoting *Stefanow v. McFadden*, 103 F.3d 1466, 1471 (9th Cir. 1996)).

Acevedo does not identify in his motion any religious practice or describe how defendants imposed a substantial burden on that religious practice. *See* Dkt. 4, ¶¶ 34-38. More specifically, Acevedo does not explain why his religion requires him to use sound amplification at a certain volume, nor does he explain how Sergeant Zatora's enforcement of MCC § 8-32-070's sound limits required him to choose between exercising his religion or abandoning it. As to the City, the only municipal action that Acevedo describes is the enactment of MCC § 8-32-070, which he explicitly does not challenge as violating IRFRA. Therefore, Acevedo has not clearly shown, let alone described, any substantial burden on his exercise of a religious practice that was caused by any defendant's actions. It follows that he can establish no imminent threat of such an injury that would afford him standing to seek prospective relief based on an IRFRA claim.

## III. Lack Of Standing Aside, Acevedo Has Not Clearly Shown He Is Entitled To Preliminary Injunctive Relief.

Even if the Court finds Acevedo has standing to seek prospective relief, he fails his burden to meet the factors for a preliminary injunction. He has no likelihood of success on the merits of either a First Amendment claim or IRFRA claim, and he cannot show that he will be irreparably harmed without an obey-the-law injunction or that the balance of the equities favors injunctive relief in this case.

**A.**   **Acevedo has no likelihood of success on the merits of his First Amendment claims against the City and Sergeant Zatora.**

Acevedo has shown no likelihood of success on the merits of his First Amendment claim. MCC § 8-32-070 regulates the time, place, and manner of speech through volume limitations. *See Ward*, 491 U.S. at 791; *Stokes*, 930 F.2d at 1169-70. Acevedo does not challenge, and so concedes, the constitutionality of the restrictions MCC § 8-32-070 sets. Rather, he complains only that Sergeant Zatora arrested him "without legal justification" for using sound amplification in public because, he insists, he was not required to have a permit to use an amplifier. Dkt. 4, ¶ 2.

As explained above, Acevedo has not shown that his arrest was improper, as he points to no evidence that he complied with MCC § 8-32-070; indeed, the video evidence indicates the opposite — that the amplifier's volume exceeded MCC § 8-32-070's limits, and thus violated the ordinance unless the exceptions for a public assembly or parade permit applied, as Sergeant Zatora correctly explained to him. Acevedo had no permit to use such loud amplification, refused to stop broadcasting, and therefore was arrested. And even if the ordinance was mistakenly enforced, that does not automatically constitute a First Amendment violation. As further explained above, Acevedo provide no argument as to how defendants violated his First Amendment rights.

Furthermore, as to the City, Acevedo alleges no basis for municipal liability under Section 1983. As explained above, a municipality is only liable for its own conduct, as manifested through its own policies or policymakers. The only City policy at issue here is MCC § 8-32-070, but Acevedo does not challenge that policy or allege that it harmed him. Nor does he mention any City policymaker or allege he was harmed by any City custom or practice. A "single incident," like Acevedo has described, will not establish a custom or practice. *Calusinski v. Kurger*, 24 F.3d 931, 936 (7th Cir. 1994); *Petropoulos v. City of Chicago*, 448 F. Supp. 3d

835, 841-42 (N.D. Ill. 2020) ("Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered."). Therefore, Acevedo has shown no likelihood of success on any First Amendment claim against the City.[3]

### B.    Acevedo has no likelihood of success on the merits of an IRFRA claim.

Again, to prevail on a claim under IRFRA, a plaintiff must show that the government "substantially burden[ed]" his "exercise of religion, even if the burden results from a rule of general applicability." 775 Ill. Stat. Comp. 35/15. A substantial burden on the exercise of a religion is "the presentation of a coercive choice of either abandoning one's religious convictions or complying with the governmental regulation." *Diggs*, 775 N.E.2d at 45. Once the plaintiff has established the substantial burden on the exercise of his religion, the government may defend its rule by showing that the "application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 Ill. Stat. Comp. 35/15. Whether a practice is the "least restrictive means" turns on "whether [the government] could have achieved, to the same degree, its compelling interest" without interfering with religious activity. *See Cassell v. Snyders*, 458 F. Supp. 3d 981, 1000 (N.D. Ill. May 3, 2020).

Acevedo has not shown that he has a likelihood of success on an IRFRA claim. First, he fails to explain why his religious faith compelled him to use amplified speech. He asserts, in conclusory fashion, that his "speech was motivated by his faith." Dkt. 4, ¶ 35. He alleges that

---

[3] Acevedo attempts to preemptively attack Sergeant Zatora's and other nondefendant officers' entitlement to the affirmative defense of qualified immunity. Dkt. 4 at 7. Qualified immunity, as Acevedo acknowledges, shields government officials from liability for damages, not from equitable claims, when the official's conduct does not violate clearly established federal rights of which a reasonable person would have known. *See White v. Pauly*, 580 U.S. 73, 78-79 (2017). Thus, it is irrelevant to whether Acevedo is entitled to preliminary injunctive relief. Still, it bears noting that Acevedo cites no authority for his argument, contending only that "the officers illegally forbade him the manner of his speech, saying he could not use amplification," and he "was arrested for his speech despite its legality." Dkt. 4 at 7. That does not show the offers violated clearly established rights and would not defeat qualified immunity.

"[h]e needs voice amplification to be heard over the noise of Chicago streets," and without amplification "he would need to raise his voice to be understood by passersby, which would distort the tone of his message." Dkt. 1, ¶ 72. But that falls short of showing that "he was required by the basic tenets of his religion" to use an amplifier to protest outside of the Planned Parenthood. *See Diggs*, 775 N.E.2d at 45. Indeed, the evidence shows that many of his fellow students engaged in the same activity without using amplifiers.

But even if using the amplifier could be viewed as an exercise of Acevedo's religion, Acevedo fails to explain how Sergeant Zatora's enforcement of MCC § 8-32-070, which he concedes is a valid ordinance, substantially burdened his exercise of religion. Critically, he does not contend that the volume limitations in MCC § 8-32-070 are themselves a substantial burden on religious exercise. His claim is that defendants substantially burdened his religious exercise by *enforcing* the ordinance; he alleges that being ordered "to cease using amplification substantially burdened his exercise of religion" and "[t]here was no compelling governmental interest in preventing [his] use of voice amplification." Dkt. 1, ¶¶ 74, 75; s*ee also* Dkt. 4, ¶¶ 34-38. But if the ordinance itself does not violate IRFRA, then neither does its enforcement. Acevedo has no likelihood of success on his IRFRA claim.[4]

### C. Acevedo will not suffer irreparable harm without an injunction, and the balance of equities weighs against injunctive relief.

Acevedo has not shown that he will suffer irreparable harm without an injunction. As explained, he merely asks for an obey-the-law injunction, but he has presented no basis to infer that defendants have not correctly enforced the law or will not do so in the future. With no

---

[4] Acevedo argues that "the same qualified immunity analysis" for his First Amendment claim applies to his IRFRA claim. No so. Qualified immunity applies to section 1983 claims, not state-law claims, *see Horton v. City of Chicago*, No. 13 C 6865, 2018 WL 4699790, at *14 (N.D. Ill. Sept. 30, 2018), although other immunities may apply to state-law claims.

chance of success on the merits, Acevedo cannot rely on the presumption of irreparable harm in First Amendment cases where there is a likelihood of success on the merits. *Cf. Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*, 56 F.4th 437, 450–51 (7th Cir. 2022). "A party with no chance of success on the merits cannot attain a preliminary injunction." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

Acevedo attempts to bolster his request for prospective relief with a hodgepodge of irrelevant points. First, he suggests that the City's prosecution of the ordinance violations was somehow in bad faith. *See* Dkt. 4, ¶ 46(a). That is spurious. The evidence shows that Acevedo was using amplification at a loud volume that exceeded the limits set by MCC § 8-32-070. Absolutely nothing in the evidence, including the transcript of his circuit court hearing, suggests the City pursued the matter in bad faith. *See generally* Ex. 5. Second, Acevedo claims that the City "refused even attempting to settle the case" before the complaint was filed. *See* Dkt. 4, ¶ 46(b). Even without considering Fed. R. Evid. 408, that point is irrelevant. Third, Acevedo complains that the Cook County State's Attorney (an arm of county, not municipal, government and not a defendant in this case) has stated that she will protect women's access to legal healthcare services. *See* Dkt. 4, ¶ 46(c). That is irrelevant too. The ordinance violations were prosecuted by the City, not the Cook County State's Attorney's Office. *See* Ex. 5. Finally, Acevedo characterizes the City's bubble ordinance as evidence that the City suppresses anti-abortion advocacy. *See* Dkt. 4, ¶ 46(e). But the bubble ordinance has already survived legal challenge. *See Price*, 915 F.3d at 1109. None of these points suggest that Acevedo's constitutional or statutory rights were violated or will be violated in the future by the City's enforcement of MCC § 8-32-070, or that an injunction is necessary to protect those rights.

On the other hand, a "follow-the-law" injunction would impair the interests of both the City and the public. Given the vagueness of such a directive, CPD officers may be unsure how to

enforce the ordinance consistently with the Court's order. Confusion regarding the scope and application of the ruling could result, especially as officers react, employing discretion, to a range of specific situations not addressed by the injunction. This could lead to hesitation or confusion in enforcement actions, to the public's ultimate detriment. That lack of clarity is precisely why broad, vague injunctions like the one Acevedo requests are so disfavored.

## CONCLUSION

For these reasons, this Court should deny Acevedo's motion for preliminary injunctive and declaratory relief.


Date:   January 17, 2025                                   Respectfully submitted,

ELLEN W. MCLAUGHLIN (IL 6304292)              MARY B. RICHARDSON-LOWRY,
AARON T. DOZEMAN (IL 6308909)                 Corporation Counsel for
City of Chicago, Department of Law              the City of Chicago
Constitutional and Commercial
  Litigation Division                         By:     s/ Aaron T. Dozeman
2 North Lasalle Street, Suite 520                     Assistant Corporation Counsel
Chicago, Illinois 60602
(312) 742-5147 / (312) 744-9018
Aaron.Dozeman1@cityofchicago.org

*Attorneys for Defendants*