# EXHIBIT 5

**Report of Proceedings, *People v. Acevedo*,
24-MC1-199522 (Cir. Ct. Cook Cty., Ill.)**

| | |
|---|---|
| 1 | STATE OF ILLINOIS ) |
| | ) SS. |
| 2 | COUNTY OF C O O K ) |
| 3 | IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS |
| | COUNTY DEPARTMENT-MUNICIPAL DIVISION |
| 4 | |
| | PEOPLE OF THE STATE ) |
| 5 | OF ILLINOIS, ) |
| | ) |
| 6 | Plaintiff, ) |
| | ) |
| 7 | -vs- ) CASE NO. |
| | ) 24-MC1-199522 |
| 8 | ETHAN ACEVEDO, ) |
| | ) |
| 9 | Defendant. ) |
| 10 | REPORT OF VIDEO-CONFERENCE PROCEEDINGS |
| 11 | held on July 16, 2024, before the HONORABLE |
| 12 | DONALD D. PANARESE, JR., Judge of said court, |
| 13 | Branch 29. |
| 14 | APPEARANCES: |
| 15 | MS. MARY RICHARDSON-LOWRY, CORPORATION |
| | COUNSEL OF THE CITY OF CHICAGO, BY: |
| 16 | MR. TIMOTHY CHO, |
| | ASSISTANT CORPORATION COUNSEL, |
| 17 | |
| | Appeared on behalf of the City; |
| 18 | |
| | MR. ROBIN RUBRECHT, |
| 19 | ATTORNEY AT LAW, |
| 20 | Appeared on behalf of the Defendant. |
| 21 | |
| 22 | |
| | JEAN M. DRISCOLL, C.S.R. |
| 23 | OFFICIAL COURT REPORTER |
| | 69 WEST WASHINGTON, SUITE 1920 |
| 24 | CHICAGO, IL 60602 |

Page 1

---

1  THE COURT: Who's the Defendant?
2  MR. CHO: Ethan Acevedo.
3  THE COURT: Step up, gentlemen. Step up. Go
4  ahead, Mr. Cho.
5  MR. CHO: Good morning, Your Honor. So, Your
6  Honor, I know this matter was set for trial once
7  before; and, um, we did notify Counsel
8  approximately last Thursday that two officers that
9  we did notify to be appearing for trial today,
10  Sergeant Zatora (phonetic) and Officer Hardy, who
11  signed a -- the officers that signed the
12  complaints, they indicated that they would not be
13  here.
14  Officer Zatora (phonetic) is on furlough
15  and Officer Hardy is on vacation. Officer
16  Manirquez, who we did notify, was here this morning
17  and indicated that he would be back at 11:00 A.M.
18  However, Judge, we believe that they are two
19  critical witnesses to our case.
20  This is a case involving a noise
21  ordinance violation as well as a -- a -- what we
22  term as a bubble statute, protesting within 50 feet
23  of a medical facility. Officers need to testify as
24  to distances between the officers, the Defendant,

Page 2

---

1  and the establishments.
2  Our officers are needed, Judge, to prove
3  up one of the cases. So, we would respectfully ask
4  for a continuance. This is the first time its been
5  set. We did notify them last Thursday, Judge. I
6  believe the prejudice -- the prejudice would be
7  minor.
8  THE COURT: We don't give dates when it's set
9  for trial, Counsel.
10  MR. CHO: Understood.
11  THE COURT: With all due respect, your
12  request for a continuance is denied.
13  MR. CHO: Judge, then what we want to do
14  here, Judge, if we can is to motion City DWP Count
15  1 which I believe would be the --
16  THE COURT: Music?
17  MR. CHO: No, Judge.
18  MR. RUBRECHT: That was the bubble ordinance
19  violation.
20  MR. CHO: Count --
21  THE COURT: The disorderly?
22  MR. CHO: Disorderly.
23  THE COURT: Motion City DWP?
24  MR. CHO: May I, Judge?

Page 3

---

1  THE COURT: Sure.
2  MR. CHO: And, I guess they are both
3  disorderlies, Judge; but, then the count that we
4  would be proceeding is the noise ordinance
5  violation. That's an amplified sound device would
6  not be able to be heard more than a hundred feet
7  away. That's the one we are proceeding on, Judge.
8  THE COURT: Which I belive is Count 1?
9  MR. CHO: Understood.
10  MR. RUBRECHT: Yes, Your Honor. But, that is
11  in fact not a disorderly charge. There -- There
12  were quite a few -- I don't know what to call
13  them, Scribner's errors or just errors altogether
14  in the paperwork that led to this charge.
15  THE COURT: Wait one second. So, Count 2 is
16  going to be motion City DWP?
17  MR. CHO: Correct, Judge.
18  THE COURT: Okay. So, that's done. So,
19  you're going to proceed on Count 1?
20  MR. CHO: Correct, Judge.
21  THE COURT: At trial?
22  MR. CHO: Yes.
23  THE COURT: Okay. Do you have any amendments
24  to the complaints?

Page 4

**Page 5**

MR. CHO: Judge, the statute itself is correct. Whether the statute's over -- overreaching term of disorderly conduct, Judge, I'm unsure. I know that the officer signed it that way. But, it's just that music and amplified sound ordinance violation.

So, perhaps, Judge, if we can just correct the disorderly conduct, failure to obey police to amplified sound violation. Judge, that's the only amendment we would make. The statute itself is actually correct, Judge.

THE COURT: Okay. Any objection?

MR. RUBRECHT: Not to that, Your Honor.

THE COURT: All right. Waive reswearing and re-execution?

MR. RUBRECHT: I am sorry?

THE COURT: Waive reswearing and re-execution of the complaint?

MR. RUBRECHT: Yes, Your Honor.

THE COURT: All right. That will be granted. Please give a copy to the -- to the Court. And, your officer will be here at 11?

MR. CHO: Yes, Judge.

THE COURT: Are you going to be ready?

**Page 6**

MR. RUBRECHT: Yes.

THE COURT: All right.

MR. RUBRECHT: When Your Honor said "DWP", do I understand correctly that the City might reinstate that charge at some point?

THE COURT: I have no idea what the City is going to do. They may try. It's the Court's position usually we will not -- the Court will not allow them to reinstate once it's set for trial as we don't give dates for trials unless for extraordinary circumstances.

MR. CHO: Judge, I think the Defense can rest assure I believe one matter goes to trial, that double jeopardy -- that double jeopardy will actually apply to the other one. You can take our word for it, Counsel, that we're going to be proceeding on this trial and this trial only; and, we will not be reinstating for the record.

THE COURT: Do you need a few minutes to prepare your officer?

MR. CHO: Yes, Judge. As well, if I were to make the amendment on the face of the complaint, Your Honor, do you want us to amend it on the face of the complaint in the court file or --

**Page 7**

THE COURT: Or, if you would like to make your amendment and then just photocopy it and give a copy to the Court. That's fine.

MR. CHO: Sorry, Judge.

MR. RUBRECHT: In the meantime, if we might, the -- So, Mr. Acevedo is here. He is the Defendant. Some equipment of his or technically an associate of his was taken in the arrest, and they have not been able to get it back despite the fact that there is no need for that equipment. It's the sound amplifier. It's not needed --

THE COURT: We can deal with that after the trial.

MR. RUBRECHT: Okay.

THE COURT: Very good.

(WHEREUPON, THE CASE WAS PASSED UNTIL 11:00 A.M.)

THE COURT: Ethan Acevedo. Step up.

Do you have a jury waiver, Counsel?

MR. RUBRECHT: Your Honor, I don't have that form.

THE COURT: It should be over on that table. Mr. Cho, --

MR. CHO: Yes.

**Page 8**

THE COURT: -- do you have any amendments to the complaint?

MR. CHO: Yes, Judge. Just, Your Honor, seeking leave to amend the complaint. Excuse me, Judge. Just changing -- striking the disorderly conduct to music and amplified sound violation. Initialed. Dated.

THE COURT: Counsel, you have no objection; correct?

MR. RUBRECHT: To the amendment?

THE COURT: To the amendment.

MR. RUBRECHT: To changing it from disorderly to a noise ordinance?

THE COURT: Music and amplification sound violation.

MR. RUBRECHT: Yes, Judge. That's perfectly fine.

THE COURT: Mr. Acevedo, step up. You are charged with music and amplification sound violation. You're pleading not guilty; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you have the right to have a trial by jury?

## Page 9

1   THE DEFENDANT: Yes, sir.
2   THE COURT: Do you wish to waive or give up
3   your right to a jury trial?
4   THE DEFENDANT: No, sir.
5   MR. RUBRECHT: That is what we are going to
6   trial -- I mean, still technically you have a
7   right to give it up. But, we are going to have
8   this judge hear it.
9   THE DEFENDANT: Yes, sir.
10  THE COURT: Do you wish to waive or give up
11  your right to a jury trial?
12  THE DEFENDANT: Yes, sir.
13  THE COURT: The document entitled Jury Waiver,
14  is this your signature on the bottom of it?
15  THE DEFENDANT: Yes, sir.
16  THE COURT: Let the record reflect it's made
17  part of the court file the Defendant's executed
18  jury waiver.
19       All right. Any preliminary matters?
20  MR. CHO: Judge, there is body cam that the
21  City intends to play and there are several body
22  cams that the Defense attempts to play. All of the
23  foundations for the body cams are stipulated to.
24       Additionally, Your Honor, --

## Page 10

1   THE COURT: Correct, Counsel?
2   MR. RUBRECHT: Yes, Your Honor.
3   THE COURT: Okay.
4   MR. CHO: Additionally, Judge, there is a
5   Google maps printout with a distance line between
6   where the Defense is indicating the defendant was
7   and the officer was. We are stipulating to that,
8   as well.
9       Would, Your Honor, like to look at the
10  exhibit?
11  THE COURT: Sure. So stipulated, Counsel?
12  MR. RUBRECHT: Yes, Your Honor. If you would
13  like to look at it in color, I have it on my laptop
14  here as well.
15  MR. CHO: Judge, the distance indicated
16  between the two points indicated on Google maps is
17  also stipulated to in terms of distance.
18  THE COURT: All right. Counsel, your name
19  is?
20  MR. RUBRECHT: Robin Rubrecht.
21  THE COURT: If you wouldn't mind going on
22  Zoom so I can make you a cohost so you can play
23  whatever you want to play.
24  MR. RUBRECHT: Okay. I would need the Wi-Fi

## Page 11

1   password.
2   THE COURT: It should be right -- There
3   should be a sheet --
4   MR. RUBRECHT: I see it here. Very good.
5   MR. CHO: You can play it under this.
6   MR. RUBRECHT: Um, it might still be
7   beneficial to be prepared to do that.
8   MR. CHO: Of course.
9   MR. RUBRECHT: Judge, I see your information
10  for Zoom and Counsel; but, I don't see any
11  information for the Wi-Fi password.
12  THE COURT: Mr. Schrobilgen, could you assist
13  Counsel just getting on so he can --
14  MR. RUBRECHT: In the alternative, Your
15  Honor, if it would be acceptable to you, I can
16  handle that to you.
17  THE COURT: Well, this way everyone will be
18  able to see it. The gallery. Everyone.
19  MR. RUBRECHT: I forgot to ask, would Your
20  Honor be okay with someone recording?
21  THE COURT: The court reporter is recording.
22  MR. RUBRECHT: Okay. Excellent. Very
23  good.
24  THE COURT: Okay. It's not going to work?

## Page 12

1   MR. CHO: Do you have a hot spot? I have a
2   hot spot, Counsel, you can use.
3   THE COURT: You have one witness?
4   MR. CHO: One witness, Judge.
5   MR. RUBRECHT: We have -- Technically, we
6   have four witnesses; but, I don't believe we will
7   be calling all of them. At this time, my plan is
8   to call three witnesses total.
9   THE COURT: Okay. We'll cross that bridge
10  when we get to it. City ready?
11  MR. CHO: Yes.
12  THE COURT: Officer, please raise your right
13  hand.
14      Do you swear that the testimony you are
15  about to give will be the truth, the whole truth,
16  nothing but the truth so help you God?
17  THE WITNESS: I do.
18                  (WHEREUPON THE
19                  WITNESS WAS DULY
20                  SWORN.)
21  THE COURT: Officer, step over here. The owl
22  will be picking you up for the court reporter. I
23  guess step over to the left. I am sorry. There
24  you are.

## Page 13

```
 1            Okay.  Go ahead, City.
 2            OFFICER GERARDO MANRIQUEZ,
 3   was called as a witness on behalf of the City,
 4   after having been duly sworn on his oath, was
 5   examined and testified as follows:
 6                  DIRECT EXAMINATION
 7   BY MR. CHO:
 8      Q.   Good morning.  Officer, please state your
 9   name, your star number, and unit of assignment for
10   the record?
11      A.   My name is Gerardo Manriquez, last  --
12   Star No. 15834.
13      Q.   I'm sorry.  And, Officer, can you please
14   spell your name for the court reporter?
15      A.   Last name?  It's M-a-n-r-i-q-u-e-z.
16      Q.   Thank you.  And, Officer, where are you
17   currently employed?
18      A.   Chicago Police.
19      Q.   How long have you been employed there?
20      A.   It will be one year on August 7th.
21      Q.   Okay.  Prior to joining the Chicago
22   Police Department, did you have prior police
23   experience?
24      A.   I did.
```

## Page 14

```
 1      Q.   Where was that?
 2      A.   Joliet.
 3      Q.   And was that part of the Joliet Police
 4   Department?
 5      A.   Say that again?
 6      Q.   Was that part of the Joliet Police
 7   Department?
 8      A.   Yes.
 9      Q.   Now, prior to joining the Joliet Police
10   Department and Chicago Police Department, did you
11   attend the academy?
12      A.   I did.
13      Q.   And can you explain  --  Where did you
14   attend the academy?
15      A.   It is located in Champaign, Illinois.
16   The Police Training Institute.
17      Q.   Okay.  And during your academy days, did
18   you have training in how to understand and handle
19   an escalated situation involving individuals
20   causing disturbances?
21      A.   More or less.
22      Q.   Can you explain what type of training you
23   received, if any?
24      A.   Basically deescalating  --  Basically
```

## Page 15

```
 1   deescalate the situations.  Not letting the
 2   individual get to you.
 3      Q.   And were those courses that you took
 4   classroom courses?
 5      A.   Yes.  Various classes.
 6      Q.   Thank you.  And did you eventually
 7   graduate from the police academy?
 8      A.   I did.
 9      Q.   All right.  Now, Officer, I want to
10   direct your attention to the date of March 30,
11   2024.  Were you on duty at that date?
12      A.   I was.
13      Q.   Okay.  And what was your assignment that
14   day?
15      A.   We got dispatched to the disturbance at
16   the parent planhood location.
17      Q.   Okay.  And prior to that, were you on
18   routine patrol?
19      A.   Regular routine patrol.
20      Q.   Okay.  And that Planned Parenthood
21   location, is that at the approximate location of
22   1201 LaSalle Drive?
23      A.   Correct.
24      Q.   And that's located in the City of
```

## Page 16

```
 1   Chicago, Illinois?
 2      A.   Yes.
 3      Q.   Okay.  Now, why were you dispatched
 4   there?
 5      A.   A disturbance.
 6      Q.   Okay.  So, when you arrived, did you
 7   arrive in a squad vehicle?
 8      A.   Yes.
 9      Q.   And what type  --  Was it a marked or
10   unmarked squad vehicle?
11      A.   Marked.
12      Q.   Now, based on your dispatch,
13   approximately where did you park your vehicle?
14      A.   We parked on the west side of LaSalle
15   Street north of Division.  The north  --  The
16   furthest north part of the parent planhood
17   building.
18      Q.   Now, Officer, I'm going to show you what
19   has been marked as City Exhibit 1.
20           And, Judge, Your Honor has a copy.  You
21   have this  --  Officer, do you recognize this
22   intersection?
23      A.   Yes.  Division and LaSalle, and this is
24   parent planhood.
```

**Page 17**

1  MR. CHO: And, Your Honor, just renewing our
2  stipulation that a foundation has been agreeable.
3  THE COURT: So stipulated, Counsel?
4  MR. RUBRECHT: Yes, Your Honor.
5  BY MR. CHO:
6  Q. So, Officer, if you wouldn't mind, here's
7  a marker. Would you mind marking the top where
8  your squad vehicle was parked?
9  A. So, this is the end of the building. So,
10  roughly right here.
11       (WITNESS INDICATING.)
12  MR. CHO: Okay. And, Judge, may the record
13  reflect that the Officer has drawn a black X at the
14  left center of the paper here?
15  THE COURT: The record shall so reflect.
16  MR. RUBRECHT: May I see that, Your Honor?
17  THE COURT: Sure. I'm going to mark it a
18  little --
19  THE WITNESS: Sorry. I couldn't.
20  THE COURT: No. That's okay.
21  MR. CHO: Thank you.
22  THE COURT: Thank you. Show it to opposing
23  Counsel.
24  MR. CHO: Judge, also putting a stipulation

**Page 18**

1  on the record that the distance between -- I will
2  get to that, Judge. My apologies. Strike that.
3  Q. Officer, once you parked your squad
4  vehicle where you indicated, what's the first thing
5  that you observed?
6  A. I observed a large gathering outside of
7  the parent planhood location as well across the
8  street on the east northwest corner of Division and
9  LaSalle, which is right here where you have it kind
10  of marked and then right next to here to the bus
11  stop sign.
12       (WITNESS INDICATING.)
13  MR. CHO: Judge, may the record -- Thank
14  you.
15  May the record reflect the Officer is
16  indicating the circle that is on the bottom right
17  center of the picture, the white circle with a line
18  going through that to the left?
19  THE COURT: The record will so reflect.
20  BY MR. CHO:
21  Q. So, specifically, with the area that you
22  marked off where you saw the gathering across the
23  street from the Planned Parenthood, what did you
24  observe at that location?

**Page 19**

1  A. Across the street or on my side?
2  Q. Across the street.
3  A. Across the street? I observed, like
4  I said, a small gathering with a speaker,
5  microphone, -- or sorry. I observed Mr. Acevedo on
6  the microphone.
7  Q. Okay. So, that individual that you
8  observed on the micro -- on the megaphone or
9  microphone, --
10  A. Microphone.
11  Q. -- is that person in court today?
12  A. Yes.
13  Q. Okay. Can you identify that person by
14  something that they are wearing?
15  A. Blue blazer, blue pants, brown shoes.
16       (WITNESS INDICATING.)
17  THE COURT: The record will reflect the
18  in-court identification of Ethan Acevedo.
19  MR. CHO: Thank you, Judge.
20  Q. Now, when you parked your vehicle and you
21  observed the Defendant across the street on the
22  microphone, were you able to hear anything coming
23  out of that microphone?
24  A. Yes.

**Page 20**

1  Q. And could you describe what type of noise
2  or audio you were hearing?
3  A. Just verbal.
4  THE COURT: Sir, Officer, keep your voice up.
5  A. Sorry. Just -- He just was speaking
6  into the microphone. Verbal -- Verbal -- Um,
7  sorry.
8  He was just basically speaking through
9  the microphone.
10  BY MR. CHO:
11  Q. And how would you describe the volume of
12  that noise while at the location where you parked?
13  A. It was audible. Even through your --
14  When we reviewed the body cam footage, you are
15  actually able to hear it through the body cam
16  footage.
17  Q. And, -- And, Officer, did you have a
18  hard time hearing that audio?
19  A. No.
20  Q. Were you straining to hear that audio?
21  A. Say that again?
22  Q. Were you straining to hear that audio?
23  A. No.
24  Q. And when you arrived in your squad

## Page 21

```
 1  vehicle, were your windows up or were they down?
 2     A.    They were actually up.
 3     Q.    And as you were approaching the area
 4  where you parked, were you traveling southbound?
 5     A.    Southbound towards the corner.
 6     Q.    Okay.  And while your windows were up,
 7  were you able to audibly hear the megaphone at that
 8  point?
 9     A.    Yes.
10     Q.    Okay.  Now, based on the observation that
11  you made, did you eventually make your way across
12  the street?
13     A.    Eventually, yes.
14     Q.    And at that point were there other
15  officers on scene as well?
16     A.    Yes.  And, there were plain officers on
17  scene.
18     Q.    Okay.  Thank you.  And was the Defendant
19  engaged in conversation with the other officers?
20     A.    Yes.
21     Q.    Okay.  What if anything did the Defendant
22  say to the other officers?
23     A.    Say that again?
24     Q.    What if anything did the Defendant say to
```

## Page 22

```
 1  the other officers?
 2     A.    Well, I was still on the Planned
 3  Parenthood corner.  Basically, when I made my  --
 4  When I made my way across the street, our sergeant
 5  and a bunch of officers were engaged in
 6  conversations with him.
 7     Q.    Okay.  During this conversation with the
 8  officers, was the Defendant using the microphone to
 9  engage in conversations with the officers?
10     A.    Yes.
11     Q.    Now, eventually, did you observe other
12  officers place or  -- tender a copy of the  -- of
13  the ordinance to the Defendant?
14     A.    Yes.  Sergeant Zatora (phonetic) gave him
15  a copy of the music amplified ordinance.
16     Q.    Okay.  And once the Defendant received
17  that ordinance violation copy, what did he do?
18     A.    He started  --
19     MR. RUBRECHT:  Objection to the
20  characterization of ordinance violation.
21  Knowledge.
22     THE COURT:  It wasn't a violation.  It was the
23  ordinance.  Objection is sustained.  Please
24  rephrase.
```

## Page 23

```
 1     BY MR. CHO:
 2     Q.    Once the Sergeant Zatora handed him a
 3  copy of the ordinance violation that  -- that
 4  he  --  or that it was trying to inform Mr. Acevedo
 5  with, what did the Defendant do?
 6     A.    He started to read out the ordinance
 7  through the microphone.
 8     Q.    Was the Defendant eventually placed under
 9  arrest?
10     A.    Yes.
11     MR. CHO:  Do you have a connection to the  --
12     MR. RUBRECHT:  No.  Judge, it requires
13  signing in through a commercial account; and,
14  because it's  --  this is my private laptop, I do
15  not have access for my firm's zoom.
16         However, if the City is willing to
17  stipulate, that might  -- Do we need video or  --
18  Because, we can still get it.  Otherwise, I don't
19  have a way  -- I have a thumb drive.  I have  --
20  Or, if you have a Zoom log-in  --
21     MR. CHO:  Counsel, if you would stipulate
22  that the body cam of the officer when we show that
23  the audio is clearly  -- um, to be able to hear
24  body cam across the street, we need to put it in.
```

## Page 24

```
 1     MR. RUBRECHT:  Depends on where it says off
 2  the street; but,  --
 3     MR. CHO:  Where you indicated, Counsel, the
 4  circles  -- circle.
 5     MR. RUBRECHT:  Thing is we never received the
 6  officer's body cam footage.  My apologies.  The
 7  other officers that were around Officer Manriquez
 8  were able to see him on his body cam.
 9     MR. CHO:  And, Judge, this is off the record.
10     THE COURT:  I'd rather it be on the record;
11  but, go ahead.
12     MR. CHO:  Would you be willing to stipulate
13  that officers approximately in this area were able
14  to clearly hear the audio on the body cam?
15  Otherwise, we have to play it.
16     MR. RUBRECHT:  Well, we will have to play it.
17     THE COURT:  Play it.  I understand where
18  Counsel is coming from.  He doesn't want to
19  stipulate to your case.
20     MR. CHO:  Understood, Judge.  I mean, for
21  judicial economy  --
22     THE COURT:  I understand that, too.  I
23  appreciate that.
24     MR. CHO:  Are you still connected to my hot
```

### Page 25

1  spot, Counsel?
2  MR. RUBRECHT: Yes. I'm not sure.
3  MR. CHO: I might be able to sign into my
4  Zoom, Judge.
5  MR. RUBRECHT: If Your Honor has a way of
6  pulling the video from the thumb drive or if we can
7  plug --
8  THE COURT: No, I don't. Usually what I do is
9  make you a cohost and then you play it; but, I
10 understand your limitations also.
11 MR. RUBRECHT: If need be, I can call someone
12 at my firm and have them relay to me the
13 information to me.
14 THE COURT: Whatever you prefer.
15                         (WHEREUPON THE DEFENSE
16                         ATTORNEY IS CALLING HIS
17                         FIRM ON HIS PHONE AT THE
18                         BENCH.)
19 MR. CHO: Judge, in the alternative, my
20 log-in -- Would Your Honor be willing to take the
21 laptop and view the video?
22 THE COURT: Sure.
23 MR. CHO: Not able to get in --
24 MR. RUBRECHT: With regard to the video, um,

### Page 26

1  the videos that I have available, regardless of how
2  we are able to show them, um, I have footage from
3  Officer Flaster (phonetic), Sergeant Zatora; but,
4  not the arrest. And, I have footage of Officer
5  Guerin (phonetic). And, then I think Watson.
6  THE DEFENDANT: There was --
7  MR. CHO: The point of view, Counsel, --
8  THE COURT: If there is no objection, I would
9  like the officer to mark my copy of where Planned
10 Parenthood was, where the Defendant was.
11     Is that okay, Counsel?
12 MR. RUBRECHT: Yes. Of course.
13 THE COURT: Officer, put a PP or something
14 just so I have an approximate --
15 MR. CHO: And then where you --
16 THE COURT: More technical difficulties?
17 MR. RUBRECHT: It seems like it. We've
18 passed several hurdles; but, nothing pops up.
19 MR. CHO: And, Judge, for the record, the
20 officer has marked Planned Parenthood as "PP" and
21 where the Defendant was seated with a triangle.
22 THE COURT: Thank you. Just for my
23 edification.
24 MR. CHO: I have --

### Page 27

1  MR. RUBRECHT: And, of course, Your Honor, I
2  will want to see that, too.
3  THE COURT: Sure. I'm going to circle them
4  just for --
5  MR. CHO: Understood. While Counsel is doing
6  that, do you mind if I just ask a couple of
7  questions of the officer regarding that mark --
8  markings?
9  THE COURT: Does that look about right?
10 MR. RUBRECHT: Yes, Your Honor.
11 THE COURT: Okay. I don't know which way is
12 north, south --
13 MR. CHO: Judge, it is directionally accurate
14 in terms of the intersection that you're viewing.
15 The left side going towards the right would be west
16 to eastbound and then the top down would be north
17 to southbound. So --
18 THE COURT: Okay. So, the Defendant is on the
19 north -- northeast corner of Division and
20 LaSalle?
21 MR. CHO: Correct, Judge.
22 THE COURT: Planned Parenthood is on the
23 southwest corner of --
24 MR. CHO: Judge, it would be the --

### Page 28

1  THE COURT: Northeast -- Northwest corner.
2  MR. CHO: Northwest corner. Excuse me.
3  Northwest.
4  THE COURT: Northwest of corner of LaSalle and
5  Division?
6  MR. CHO: Correct, Judge.
7  THE COURT: And the "X" is where the officer
8  was?
9  MR. CHO: Officer parked his vehicle, yes.
10 THE COURT: Okay. Very good. Go ahead.
11 BY MR. CHO:
12 Q. Officer, did you eventually make your way
13 over to where you indicated that Planned Parenthood
14 was on the sheet paper?
15 A. Yes.
16 Q. Okay. But, prior to that, -- And, which
17 direction were you walking towards that at the
18 time?
19 A. So, parked. Walked towards the Planned
20 Parenthood. That would be southbound.
21 Q. Okay. And prior to making your way
22 towards the Planned Parenthood, you got out of your
23 squad vehicle?
24 A. Yes.

### Page 29

1  Q. And at that point before you made your
2  way to that corner, were you still able to hear the
3  microphone that the Defendant was using audibly?
4  A. Yes.
5  Q. And can you describe the volume of that
6  audio?
7  MR. RUBRECHT: Objection, Your Honor. Asked
8  and answered.
9  THE COURT: I didn't hear the answer.
10  A. It was noticeable.
11  THE COURT: It was noticeable.
12  A. Audible.
13  THE COURT: That will be stand.
14  MR. CHO: Judge, other than we are seeking to
15  play the video --
16  MR. RUBRECHT: So, at this moment you are
17  talking about --
18  MR. CHO: There is a moment.
19                    (WHEREUPON THE ATTORNEYS
20                    ARE TALKING TO THEMSELVES
21                    AND NOT DIRECTING THEIR
22                    CONVERSATION TO THE
23                    JUDGE FOR THE RECORD.)
24  MR. RUBRECHT: Your Honor, if I may?

### Page 30

1  THE COURT: Sure. Just don't drop it.
2                    (WHEREUPON THE ATTORNEY IS
3                    HANDING THE COURT HIS
4                    LAPTOP COMPUTER.)
5  THE COURT: Audio?
6  MR. RUBRECHT: It can be turned louder; but,
7  it should be audible. You just need to hit play.
8  Oh, with a mouse. I can take care of it if you
9  would like.
10  THE COURT: It's going.
11  MR. CHO: I believe the volume --
12  THE COURT: The volume needs to be --
13  MR. RUBRECHT: Up for it. Some of the parts
14  the audio is not turned on.
15  MR. CHO: That's about a few minutes in. It
16  should have audio, I think.
17  MR. RUBRECHT: Video will complete -- You'll
18  hear audio by the time of the officer -- I believe
19  this is Officer Watson. It doesn't really matter.
20  MR. CHO: Counsel --
21                    (WHEREUPON THE VIDEO
22                    IS BEING PLAYED ON
23                    THE LAPTOP COMPUTER.)
24  MR. CHO: All right, Judge.

### Page 31

1  THE COURT: I am sorry?
2  MR. CHO: We ask to publish it at this point.
3  If Counsel wishes to play the entire video, fine.
4  But, for the purpose of our case in chief, Judge,
5  if I may just ask a couple follow-ups?
6  THE COURT: Sure.
7  BY MR. CHO:
8  Q. Officer, if -- Judge, may I?
9  In that video, were you located -- were
10  you located on the northwest corner of the
11  intersection during the time the video was
12  playing?
13  A. Yes.
14  Q. And during that time, was the Defendant
15  continually engaged in speaking to you through the
16  microphone?
17  A. Yes.
18  Q. Officer -- Strike that, Judge.
19  Did you make your way across the street?
20  A. Yes.
21  MR. CHO: I tender the witness.
22  THE COURT: Cross-examination.
23                    CROSS EXAMINATION
24  BY MR. RUBRECHT:

### Page 32

1  Q. Officer Manriquez, you were asked about
2  when you pulled up to near Planned Parenthood in
3  your squad vehicle; is that correct?
4  A. Yes.
5  Q. At that time while you were in the squad
6  vehicle, were you able to see, um, Mr. Acevedo?
7  A. Yes.
8  Q. Were you able to determine what he was
9  wearing?
10  A. Not right away.
11  Q. Were you aware that there was another
12  individual that spoke on the microphone for
13  approximately half an hour to an hour?
14  MR. CHO: Objection, Judge. Calls for
15  speculation as to what happened before he arrived.
16  THE COURT: Are you asking him what happened
17  before he arrived? If he knew?
18  MR. RUBRECHT: No. No. I am asking -- I
19  will rephrase that.
20  Q. Are you aware that in the -- throughout
21  the events that are at issue here, there was more
22  than one individual speaking on the microphone?
23  A. All I remember is him speaking through
24  the microphone; because, me and my field training

officer, we didn't arrive until like 9:59 A.M., based on my body footage.

Q. When was the first time that you approached Mr. Acevedo up close?

A. I don't have an exact time; but, it was after 10:00 A.M. Eventually, when we made our way across the street towards where he was located at.

Q. And it was very soon before the moment he was arrested?

A. Say that again?

Q. It was very soon before he was arrested?

A. Basically right before he got arrested.

Q. Do I understand then that until you approached him in the moment immediately prior to his arrest, you were never less than a hundred feet or 80 feet from -- across the interaction from Mr. Acevedo?

MR. CHO: Objection.

A. Will you rephrase that?

THE COURT: Can you rephrase that?

BY MR. RUBRECHT:

Q. Do I understand correctly then that until you approached Mr. Acevedo, the moment immediately before his arrest, you were on the northwest side

Page 33

of the intersection?

A. We parked just north of the parent planhood location. That's where we parked. We made our way to the actual corner and then eventually we made our way across the street towards the Defendant.

Q. Do you recall anyone asking Mr. Acevedo to turn down the volume?

MR. CHO: Objection. Hearsay.

THE COURT: Sustained. Please rephrase.

Did anyone ask him to turn down the volume?

THE WITNESS: Yes.

BY MR. RUBRECHT:

Q. Who asked him to turn down the volume?

A. Well, Sergeant Zatora when he was talking to him. When he gave him the -- the ordinance.

MR. RUBRECHT: I suppose I should object to that based on hearsay. We don't have Sergeant Zatora here.

THE COURT: Sustained.

MR. CHO: Judge, he asked the question and he objected to the answer. He asked who and then when he gave --

Page 34

THE COURT: Rule number one, if you don't know the answer, you don't ask the question. Right?

MR. CHO: Okay, Judge. Understood.

BY MR. RUBRECHT:

Q. Officer Manriquez, when you hear conversation outside your vehicle's window immediately next to you, are you able to hear what is said?

A. Can you reask the question again?

Q. If you are in your squad car with the windows rolled up and someone is speaking next to you outside the vehicle, are you able to hear what that individual is saying?

MR. CHO: Objection to the hypothetical. Non-relevant hypothetical, Judge. Not relevant. Objection. Relevance.

MR. RUBRECHT: It is relevant because the ordinance is extremely subjective. It mentions nothing about decibel levels. It just says louder than average conversational level. So, the only thing we have to go off of is the officer's feelings -- that officer's feelings.

THE COURT: You may answer, if you understand the question.

Page 35

MR. CHO: Judge, I apologize. Where in the statute do you see that, Counsel?

MR. RUBRECHT: I have it here. The ordinance reads "no person in the public way shall employ any device that amplifies sound that is louder than average conversational level at a distance of 100 feet or more measured virtually -- "

MR. CHO: I got it.

MR. RUBRECHT: Shall I repeat the question, Your Honor?

THE COURT: Please.

BY MR. RUBRECHT:

Q. My question was, Officer Manriquez, if you are sitting in your squad vehicle with the windows rolled up and someone is talking right outside your vehicle, are you able to hear the conversation or the words?

MR. CHO: Just renew my objection.

THE COURT: Overruled. You may answer, Officer.

A. In my opinion, it depends how loud the person is actually speaking.

THE COURT: That's what he is asking you.

THE WITNESS: Oh.

Page 36

| | |
|---|---|
| 1 | BY MR. RUBRECHT: |
| 2 | Q.   Average conversation? |
| 3 | A.   Average conversation? |
| 4 | Q.   Like you -- you and I are doing right |
| 5 | now. |
| 6 | A.   Probably not. |
| 7 | Q.   Fair enough.  Just a moment, Your Honor. |
| 8 | Thank you. |
| 9 |      Oh, Officer Manriquez, did you measure |
| 10 | the volume of Mr. Acevedo's speech? |
| 11 | A.   I have no way of measuring that. |
| 12 | THE COURT:  You know, based on the Officer's |
| 13 | truthfulness and his testimony, and he has done a |
| 14 | very fine job; but, the City has not met their |
| 15 | burden.  There is a finding of not guilty. |
| 16 | MR. RUBRECHT:   Thank you, Your Honor. |
| 17 | THE COURT:   Thank you.  Thank you, Officer. |
| 18 | There's no fault of yours.  You testified |
| 19 | truthfully, credibly.  You testified very well. |
| 20 |      Now, as far as this equipment, whose |
| 21 | equipment is this? |
| 22 | THE DEFENDANT:   Friend of mine. |
| 23 | THE COURT:   Well, he's going to have to |
| 24 | come in with proof of ownership to get it |

| | |
|---|---|
| 1 | released. |
| 2 | THE DEFENDANT:  It's written under my -- |
| 3 | THE COURT:   I am sorry? |
| 4 | MR. RUBRECHT:   Oh, the -- the evidence |
| 5 | sheet has it -- |
| 6 | THE COURT:  I believe it's under him; but -- |
| 7 | MR. RUBRECHT:   No -- Yeah, it's under his |
| 8 | name. |
| 9 | THE COURT:  But, if it's someone else's |
| 10 | equipment, he's going to have to come in with |
| 11 | ownership -- |
| 12 | THE DEFENDANT:  How is -- |
| 13 | THE COURT:  -- and I'll release them. |
| 14 | THE DEFENDANT:   -- he going to prove |
| 15 | ownership? |
| 16 | THE COURT:  Receipts when he purchased it. |
| 17 | THE DEFENDANT:  That's ridiculous. |
| 18 | THE COURT:  All right.  Court is in recess. |
| 19 |      (WHEREUPON, THOSE WERE ALL OF |
| 20 |       THE PROCEEDINGS HELD IN THE |
| 21 |       ABOVE-ENTITLED CAUSE.) |

| | |
|---|---|
| 1 | STATE OF ILLINOIS     ) |
| 2 |                       )   S.S. |
| 3 | COUNTY OF COOK        ) |
| 4 | |
| 5 |      I, JEAN M. DRISCOLL, C.S.R., OFFICIAL |
| 6 | COURT REPORTER, CIRCUIT COURT OF COOK COUNTY, |
| 7 | COUNTY DEPARTMENT, MUNICIPAL DIVISION, do hereby |
| 8 | certify that I reported in shorthand the |
| 9 | proceedings held in the above entitled cause; that |
| 10 | I caused the above report of proceedings to be |
| 11 | transcribed into typewriting, which I hereby |
| 12 | certify is a true and correct transcript of the |
| 13 | proceedings held before the HONORABLE DONALD D. |
| 14 | PANARESE, JR., Judge of said court, Branch 29. |
| 15 | |
| 16 | |
| 17 |      _Jean M. Driscoll_____ |
| 18 |      JEAN M. DRISCOLL, C.S.R. |
| 19 |      OFFICIAL COURT REPORTER |
| 20 | |
| 21 |      1-15-2025_____ |
| 22 |      DATE |
| 23 | |
| 24 | C.S.R. Certificate No. 084-002816 |