IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ETHAN ACEVEDO,<br><br>    Plaintiff,<br>  v.<br><br>SERGEANT TOMASZ ZATORA, in his individual capacity, and the CITY OF CHICAGO, an Illinois municipal corporation,<br><br>    Defendant. | Case No. 1:24−cv−12654<br><br>Honorable Georgia N. Alexakis<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION
FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff Ethan Acevedo, by and through his attorneys, Mauck & Baker, LLC, replies to the City of Chicago and CPD Sergeant Tomasz Zatora, stating in support of its Motion for Injunctive and Declaratory Relief as follows.

**AREAS OF AGREEMENT**

1. The parties agree on the following facts: a) that the additional videos from Sgt. Zatora are central to Ethan's claims and complete the partial footage he had available to him, Dkt 25 at 2; b) the Planned Parenthood facility was around 100 feet from where Ethan stood across the street, Dkt 25 at 4; c) Sgt. Zatora "told Acevedo that he could not use amplified sound that could be heard from 100 feet unless he had a permit," Dkt 25 at 5; d) Sgt. Zatora "informed [Ethan] that he would be cited if he continued using the amplifier," Dkt 25 at 5; e) Sgt. Zatora "called out Acevedo for his continued use of the amplifier," not for the volume of his amplification, Dkt 25 at 5.

1

2. The parties agree on a) which elements entitle a party to a preliminary injunction, Dkt 25 at 6; b) that an order for injunctive relief must meet the requirements of Rule 65(d), Dkt 25 at 8; d) that MCC § 8-32-070 ("the ordinance") regulates the time, place, and manner of speech, Dkt 25 at 16; and e) that the volume limitations in the ordinance are not a substantial burden on religious exercise, Dkt 25 at 18.

## NEW FACTS FROM DEFENDANTS' ADDITIONAL EVIDENCE

3. Sgt. Zatora was the only officer who spoke with Ethan before his arrest[1] on March 30, 2024. The video footage of their interactions can be seen in Ex. 3 of Defendants' Response ("Defs' Response, Ex. 3")at 2:30–3:52 and Ex. 4 ("Ex. 4") of the same at 1:57-4:48.

4. No officer told Ethan that he was too loud. *See* Defs' Response, Ex. 3 at 2:30–3:52, Ex. 4 at 1:57-4:48.

## QUESTIONABLE RELEVANCE

5. Defendants bring up two additional sections of municipal code in their Response: § 8-4-010(e) for disobeying a City official during a public crisis/emergency and § 8-4-010(j) for violating the bubble ordinance. Dkt 25 at 3-4. Neither section nor its enforcement is challenged in this lawsuit.

## WHERE DEFENDANTS MISSTATE THE RECORD

6. The Defendants argue "facts" that are not in the record:

7. "They [the officers] told Acevedo that he was too loud, and that without a

---

[1] Except for Ofc. Flaster's interjection in Ethan's and Sgt. Zatora's conversation that police doesn't have to supply Ethan with the law. Defendants' Response, Ex. 3 at 3:37–3:39.

permit for such loud amplification, he was in violation of the City's sound amplification ordinance . . . ." Dkt 25 at 1. No officer told Ethan that he was too loud. *See generally* Dkt 1, ¶¶ 40-50; *see also* Defs' Response, Ex. 3 at 2:30–3:52, Ex. 4 at 1:57-4:48.

8. "Sergeant Zatora informed Acevedo" that "the amplifier was audible above a conversational level at over 100 feet away" and therefore violated the sound amplification ordinance. Dkt 25 at 7-8. Sgt. Zatora never said this to Ethan. Instead, the Defs' footage shows that when Sgt. Zatora first spoke with Ethan, he said "I'm here to resolve the problem. We get a [inaudible] about amplified sound. There's an ordinance against that." Defs' Response, Ex. 3 at 2:30–2:49. Sgt. Zatora then said, "You cannot have any amplified sound on the public way that *can be heard from a hundred feet*" (emphasis added). Defs' Response, Ex. 3 at 2:53–3:02. Notably, Sgt. Zatora omitted the leeway the ordinance gives ("louder than average conversational level").

9. "Sergeant Zatora correctly explained to" Ethan that "unless the exceptions for a public assembly or parade permit applied" Ethan's volume exceeded the ordinance's limits. Dkt 25 at 16. The Defendants do not cite to video evidence to support this claim because it never happened. *See* Defs' Response, Ex. 3 at 2:30–3:52, Ex. 4 at 1:57-4:48.

10. Defendants' accusation that Ethan "grossly misrepresents the evidence," (Dkt 25 at 7) itself grossly misrepresents the evidence which the Defendants point to: Sgt. Zatora's own video shows that he was speaking with someone other than Ethan—across the street from Ethan—when he said that "the microphone is loud, and you

3

guys don't have a permit for this." Defendants Response, Ex. 2 at 4:20-4:50.

11. Defendants claim that Ethan "does not even make [the] argument in his motion" that "by preventing him from broadcasting on the public way near a health clinic, defendants violated his constitutional . . . rights." Dkt 25 at 8. If this was not clear from Ethan's opening brief (which by reference incorporates Plaintiff's Complaint), Ethan submits that *being arrested for* "broadcasting on the public way near a health clinic" violated his constitutional rights and chilled his speech. This is why Ethan needs an injunction.

12. Ethan does not claim that mere enforcement of the noise ordinance is a substantial burden of his religious exercise. Dkt 25 at 18. Instead, he claims that his unlawful arrest and silencing substantially burdened his religious exercise.

## ARGUMENT

a) **Defendants effectively concede that Ethan was told he could not use amplification and that he was told nothing about volume on the day of his arrest.**

13. The Defendants' admission that "Sergeant Zatora told Acevedo that he could not use amplified sound that could be heard from 100 feet unless he had a permit," Dkt 25 at 5, is helpful for framing the relevant issue in this case. It is not whether Ethan was too loud under § 8-32-070. That issue was already tried and adjudicated in *People v. Acevedo*, 24-MC1-199522 (Cir. Ct. Cook Cty., Ill.), where the court found by a preponderance of the evidence[2], that "the City has not met their burden. There is a finding of not guilty." Defs' Ex. 5 at 37:12-15.

---

[2] Ordinance violation merely requires proof by preponderance of the evidence standard. IL R S CT Rule 578.

4

14. Instead, the issue is whether Sgt. Zatora and the other CPD officers around Ethan prohibited him from using an amplifier at all.

15. Correctly framing the issue is necessary here because the Defendants insist throughout their Response that Ethan was too loud. Their belaboring is contrary to the indisputable evidence that on March 30, 2024, Sgt. Zatora forbade Ethan from using amplification altogether. Defs' Response, Ex. 3 at 2:30–3:52, Ex. 4 at 1:57-4:48.

16. The Defendants' belaboring Ethan's volume is apparently necessary for them to sidestep the fact that they cite *no* video evidence where Ethan was told to lower his volume, nor any evidence that Sgt. Zatora arrested Ethan because of the volume of Ethan's amplification. Dkt 25 at 5-6. Instead, the evidence shows that Ethan was arrested because he would not "cease" speaking into his microphone. Ex. 4 at 1:57-4:48.

17. CPD Officer Hardy even told Ethan's wife that Ethan was arrested for his refusal to accept he needed a permit to use amplification. Dkt 1 at ¶53; Ex. 10 of Plaintiff's Complaint at 1:06-1:56.

   **b) Defendants' arguments regarding Rule 65(d) do not address the merits of injunctive relief.**

18. Although the Defendants punctiliously avoid reference to the content (much less viewpoint) of Ethan's message, the Court need not ignore the reality that speech questioning abortion is despised by many. Its suppression should be scrutinized.

19. The Defendants are mistaken when they claim that Ethan seeks injunctive relief "simply [because] defendants applied the ordinance incorrectly." Dkt 25 at 9. That makes it sound like he was approached, told he was too loud, given a ticket, and

let go on his way. But what happened was that as Ethan spoke against abortion in a public forum, he was told he could not use amplification even though police just handed him an ordinance allowing amplification, and he was arrested and held for six hours in a cell. This would obviously intimidate a reasonable person into silence in any similar future context (i.e. speaking a message about abortion via limited amplification across the street from an abortion clinic).

20. Concerning the propriety Ethan's requested relief, *E.E.O.C. v. AutoZone, Inc.,* 707 F.3d 824 (7th Cir. 2013) provides a helpful comparison. The injunction in that case shows just how specific and limited Ethan's request is by contrast.

21. The *Autozone, Inc.* court analyzed whether an injunction requiring Autozone to "comply with the reasonable-accommodations requirement of the ADA for [all] employees in the Central District of Illinois. . ." was appropriate after Autozone's misconduct against a single employee. 707 F.3d at 844. That was indeed a broad and vague injunction. Nevertheless, except for requiring the lower court to add a temporal limit, the Seventh Circuit upheld the injunction.

22. Ethan, on the other hand, seeks a far more narrow injunction that is 1) restricted solely to himself, 2) restricted to a single location (the intersection of LaSalle Drive and Division Street), and 3) concerns a single issue: that Ethan be guaranteed the right to use amplification consistent with MCC § 8-32-070 *without a permit from the City*.

23. Such an injunction would not be redundant, since officers near the Planned Parenthood at 1200 N. LaSalle Drive on March 30, 2024, expressed the mistaken

6

belief that Ethan either needed a permit to use amplification (Complaint, Ex. 10 at 1:06-1:56) or even at all. Defs' Response, Ex. 3 at 2:30–2:49.

    **c) Ethan has demonstrated standing.**

24. Defendants fail altogether to address Ethan's claim that he has standing based on a current injury, thereby effectively conceding the point. They merely assert that Ethan's arrest was not a constitutional violation and that he has not shown "certainly impending" injury.

25. Regarding "certainly impending," the Defendants misstate the rule. In the First Amendment context, standing does not depend on "certainly impending" future injury. *Compare Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) (employing the "certainly impending" standard where constitutionality of pre-hold detention after lawful arrest on suspicion of robbery was challenged) *with Brown v. Kemp*, 86 F.4th 745, 766 (7th Cir. 2023) (finding standing under "actual and well-founded fear of enforcement" where plaintiffs who challenged a statute showed they had self-censored their speech after seeing the statute enforced).

26. The "hodgepodge" of points the Defendants criticize at p. 19 of their Response concern Ethan's standing to seek prospective relief. Their relevance is to the "actual and well-founded fear of enforcement" that Ethan has based on his current injury, which results in his self-censorship. *See Id*. Viewed together, they show that Ethan reasonably fears that he will be arrested again if he, like before, uses amplification at any volume near 1201 N. LaSalle Drive.

27. In doubt of Ethan's standing, the Defendants make the argument that even if Ethan was incorrectly arrested without having violated the ordinance, he would

prove no First Amendment violation because "local government does not violate the federal Constitution" by violating its own laws. Dkt 25 at 12.

28. The case cited by Defendants, *Garcia v. Kankakee Cnty. Hous. Auth.* in support of this proposition. 279 F.3d 532, 535 (7th Cir. 2002) proves the exact opposite. A fired county employee sued his former employer for alleged violations of free speech and due process after he was fired. The part quoted by the Defendants was the *Garcia* court's shrugging at that plaintiff's equating an alleged breach of an employment contract with a constitutional violation. *Id*. Unlike Ethan, "Garcia was not fined or imprisoned." *Id*. at 534.

### d) Ethan has alleged facts supporting the City's *Monnell* liability.

29. The defense claims that Ethan alleged no custom or practice of pointed by the City. Dkt 25 at 16. But he has so alleged: "The City has a history of suppressing advocacy against abortion," Dkt. 4 at 14, and he noted examples of that custom or practice in Exhibit 3 of his opening brief and case law cited there. *Price v. City of Chicago*, No. 16-CV-8268, 2017 WL 36444, at *2 (N.D. Ill. Jan. 4, 2017).

30. Ethan's wrongful arrest and silencing fits well into the pattern of the City's history of suppressing speech against abortion.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ethan Acevedo respectfully requests that this Court enter an order granting him the following:

A. Declare that Ethan Acevedo has the right, consistent with Chi., Ill., Code § 8-32-070, to use voice amplification on the sidewalk in front of 1201 N. LaSalle Drive, Chicago, Illinois, without a permit;

B. Preliminarily and permanently enjoin Sgt. Zatora and the City through its employees, agents, or representatives from arresting Ethan Acevedo when he speaks using voice amplification which does not exceed conversational level at a distance of 100 feet in the vicinity of the Planned Parenthood facility entrance at 1200 N. LaSalle Drive, Chicago, Illinois;

C. Such other relief as this Court deems appropriate.[3]

                                      Respectfully submitted,

                                      ETHAN ACEVEDO

                                      /s/ *Robin Rubrecht*
                                      One of his attorneys

John W. Mauck (1797328)
Robin J. Rubrecht (6340970)
**MAUCK & BAKER, LLC**
1 N. LaSalle St. Suite 3150
Chicago, IL 60602
312-726-1243
jmauck@mauckbaker.com
rrubrecht@mauckbaker.com
Attorneys for Plaintiff

---

[3] Ethan's opening brief additionally requested "Directing the Defendants to answer or otherwise plead to Ethan's Complaint in twenty-one (21) days," but the schedule of Defendants' responsive pleading and/or motion has already been agreed on, wherefore this request is omitted.