# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ETHAN ACEVEDO, ) <br> ) <br>           Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> SERGEANT TOMASZ ZATORA, in his ) <br> individual capacity, and the CITY OF ) <br> CHICAGO, an Illinois municipal ) <br> corporation, ) <br> ) <br>           Defendants. ) | No. 24 C 12654 <br><br> Hon. Georgia Alexakis |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
RULE 12(B)(6) MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Ethan Acevedo and fellow Moody Bible Institute students gathered to protest at the Planned Parenthood clinic at La Salle Drive and Division Street last March. Acevedo crossed La Salle Drive to use an amplifier to project his voice. Chicago Police Department ("CPD") officers heard the amplifier from across the busy intersection. Sergeant Tomasz Zatora told Acevedo that he was too loud, and that without a permit for such loud amplification, he was in violation of the City's sound amplification ordinance, Municipal Code of Chicago, Ill. ("MCC") § 8-32-070. Acevedo refused to stop, even after Sergeant Zatora drove to the police station to print a copy of the ordinance to show him. He was therefore arrested and cited for violating MCC § 8-32-070 and the City's disorderly conduct ordinance, MCC § 8-4-010(e).

Acevedo maintains that his amplified volume complied with MCC § 8-32-070, and CPD erred in enforcing the ordinance. Based on that, he claims that defendants City of Chicago and Sergeant Zatora violated his constitutional and statutory rights. He seeks equitable relief and damages under 42 U.S.C. § 1983 for alleged First Amendment violations (count I); false arrest in violation of the Fourth Amendment (count III); and retaliatory arrest in violation of the First and Fourth Amendments (count IV). He also asserts a supplemental state-law claim under the Illinois Religious Freedom Restoration Act ("IRFRA"), 775 ILCS 35/1 *et seq.* (count II).

Acevedo's complaint should be dismissed in its entirety. He alleges no basis for municipal liability, fails to plead a plausible First or Fourth Amendment claim, and cannot overcome Sergeant Zatora's qualified immunity. He also identifies no substantial burden on his religious exercise, as IRFRA claims require, and tort immunity bars his state-law damages claim.

## BACKGROUND

Acevedo's complaint relies on "body-worn camera . . . footage" of the incident at La Salle Drive and Division Street. Dkt. 1, ¶ 22; *see* Dkt. 4, ¶ 18 ("The footage speaks for itself,

allowing the Court to base its decision on direct, contemporaneous evidence."). Those videos include camera footage from Sergeant Zatora, other officers, and Acevedo's fellow protestor Mario Navarro. *See* Dkts. 1-2 (Navarro), 1-3 (Navarro), 1-4 (Navarro), 1-5 (Sergeant Zatora), 1-6 (CPD Officer Garren), 1-7 (CPD Officer Flaster), 1-8 (CPD Officer Flaster), 1-9 (Navarro), 1-10 (Mekayla Acevedo). Exhibits attached to a pleading are considered part of the pleading and control over conflicting allegations. *See Bogie v. Rosenberg*, 705 F.3d 603, 609-10 (7th Cir. 2013) (on motion to dismiss, video exhibit controls over contrary allegations). When a pleading references evidence, like video or documents, that is "central to" the plaintiff's claims, it can be incorporated into the pleading. *Id.* at 609. The facts below are thus based on the complaint and videos, including additional videos from Sergeant Zatora's camera attached to this motion. The latter videos are central to Acevedo's claims and complete the partial footage he supplied.

**City Ordinances.** Several City ordinances regulate noise in public places. *See* MCC §§ 8-32-070 *et seq*. The amplified sound ordinance, MCC § 8-32-070, states in relevant part:

> (a) No person on the public way shall employ any device or instrument that creates or amplifies sound, including but not limited to any . . . amplifier . . . , that is louder than average conversational level at a distance of 100 feet or more, measured vertically or horizontally, from the source.
>
> (b) [omitted]
>
> (c) The limitations imposed in this section do not apply between the hours of 8:00 A.M. and 10:00 P.M. to a person participating in: (1) a public assembly, as that term is defined in Section 10-8-334; or (2) a parade, athletic event, or outdoor special event, as defined in Sections 10-8-330 , 10-8-332 , or 10-8-335 of this Code; provided that a permit has been issued for the parade, athletic event or outdoor special event, if required, and the person is in compliance with the permit. . . .

MCC § 8-32-070(a), (c). Thus, a person may use amplified sound "louder than average conversational level at a distance of 100 feet or more . . . from the source," *id.* § -070(a), only when participating in a "public assembly" or with a "parade" permit, *id.* § -070(c).

2

The City also has an ordinance prohibiting "disorderly" conduct, MCC § 8-4-010, which includes "fail[ing] to obey an order by a peace officer . . . issued under circumstances where it is reasonable to believe that the order is necessary to allow public safety officials to address a situation that threatens the public health, safety, or welfare," *id.* § -010(e). MCC § 8-4-010 also creates a "bubble zone" around healthcare buildings, prohibiting "knowingly approach[ing] another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way within a radius of 50 feet from any entrance door to a hospital, medical clinic or healthcare facility[.]" *Id.* § -010(j)(1); *see Price v. City of Chicago*, 915 F.3d 1107, 1109 (7th Cir. 2019) (upholding MCC § 8-4-010(j)(1)).

**Acevedo's arrest.** On March 30, 2024, Acevedo's group came to the Planned Parenthood clinic at the northwest corner of La Salle Drive and Division Street "to engage with the public on the religious, social, and political ramifications of abortion." Dkt. 1, ¶ 26. The group stood in front of the clinic with signs, engaged passersby and Planned Parenthood volunteers, and passed out leaflets. *Id.* ¶¶ 27, 28; *see* Dkts. 1-2, 1-3. Across La Salle Drive, on the northeast corner of the intersection, one of them began speaking through an amplifier. Dkt. 1, ¶ 29. The amplifier was loud enough to be heard over conversations among individuals standing by the clinic, *e.g.*, Dkt. 1-2 at 1:12; Dkt. 1-3 at 00:23, around 100 feet away, *see* Ex. 1 (Google map view of La Salle Drive and Division Street); Fed. R. Evid. 201(b); *United States v. Julius*, 14 F.4th 752, 756 (7th Cir. 2021) ("We and other courts have taken judicial notice of distance estimates from Google Maps."). About a half an hour after the Moody Bible Institute students arrived at the Planned Parenthood, CPD officers arrived. Dkt. 1, ¶¶ 30, 31. After another hour or so, Acevedo began speaking over the amplifier. Dkt. 1, ¶ 32; Dkt. 1-2 at 3:19.

At 9:55 a.m., Sergeant Zatora arrived and parked at 1212 N. La Salle Drive, just north of the Planned Parenthood. *See* Ex. 2 at 00:00-2:00 (Sergeant Zatora's body-worn camera). As Zatora walked south toward the Planned Parenthood, Acevedo's amplified voice from across La Salle Drive could be heard over the conversations taking place in front of the Planned Parenthood. *See id.* at 2:00-8:41. Sergeant Zatora introduced himself to one of the protestors and explained that they should not pass out leaflets so close to the Planned Parenthood, in accordance with the bubble ordinance, MCC § 8-4-010(j)(1). Dkt. 1, ¶ 35; Dkt. 1-5 at 6:20; Dkt. 1-6 at 2:20-4:00; Ex. 2 at 2:20-2:50. Sergeant Zatora also told the student that "the megaphone is loud, and you guys don't have a permit for this." Dkt. 1, ¶ 36; Dkt. 1-5 at 4:12-4:43; Ex. 2 at 4:16-4:20. The protestor disagreed that a permit was required. Ex. 2 at 4:20-4:50. All the while, Acevedo was speaking through the amplifier and could be heard over the conversations happening at the Planned Parenthood. *See* Dkt. 1-6 at 00:00-5:00; Ex. 2 at 2:00-8:41. At one point, a woman standing by the Planned Parenthood fell, and while Sergeant Zatora and other officers assisted her, Acevedo could be heard from across the street. Dkt. 1-6 at 7:40-8:00; Ex. 2 at 7:36-8:41.

After returning to his squad car for about 10 minutes, Sergeant Zatora exited the car onto La Salle Drive. Ex. 3 (Sergeant Zatora's body-worn camera) at 00:00-2:00. He crossed La Salle Drive and walked towards Acevedo, whose amplifier was loudly audible. *Id.* at 2:00-2:34. Sergeant Zatora told Acevedo that he could not use amplified sound that could be heard from 100 feet unless he had a permit. *See* Dkt. 1, ¶¶ 40, 42; Ex. 3 at 2:55-3:00. Acevedo asked to be shown the ordinance. Ex. 3 at 3:00-3:02. Sergeant Zatora tried to show Acevedo the ordinance on his cellphone, but Acevedo insisted that Sergeant Zatora print the ordinance out for him. *Id.* at 3:02-3:52. Sergeant Zatora agreed to do so, and as he returned to his car on the other side of La Salle Drive, Acevedo could be heard speaking through the amplifier. *Id.* at 3:52-5:12. Sergeant Zatora then drove to the police station to print the ordinance for Acevedo. *Id.* at 5:12-6:52.

Sergeant Zatora returned with a copy of the ordinance. Ex. 4 (Sergeant Zatora's body-worn camera) 00:00-2:00. He showed it to Acevedo and informed him that he would be cited if he continued using the amplifier. *Id.* at 2:00-2:24. Acevedo began reading the ordinance into the amplifier. *Id.* at 2:24-3:04; Dkt. 1, ¶ 49. Sergeant Zatora called out Acevedo for his continued use of the amplifier and asked him not to escalate the situation; Acevedo argued and refused to stop using the amplifier; and CPD officers arrested him. Ex. 4 at 3:04-4:49; Dkt. 1, ¶¶ 50, 51.

**Acevedo's Circuit Court hearing.** Acevedo was cited for violating MCC §§ 8-32-070 and 8-4-010(e). In July 2024, the City's attorney requested a continuance of the trial to allow Sergeant Zatora and another officer to attend, explaining that their testimony was necessary because they "signed the complaints" and were "critical witnesses." Ex. 5 (Tr. of Proceedings July 16, 2024, *People v. Acevedo*, Case No. 24-MC1-199522, Cir. Ct. Cook Cty.) at 2:8-3:4.[1] The court denied the request for a continuance. *Id.* at 3:11-12. The citation for disorderly conduct was accordingly dismissed for want of prosecution. *Id.* at 3:13-4:17; Dkt. 1, ¶ 56. The hearing on the sound amplification violation proceeded based on the testimony of another officer, who stated that Acevedo could be heard on the amplifier from across La Salle Street, Ex. 5 at 19:20-23, even through the rolled-up windows of his squad car, *id.* at 21:6-8. Nevertheless, the court found Acevedo not guilty of violating MCC § 8-32-070. *Id.* at 37:14-15; Dkt. 1, ¶ 56.

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether the complaint states a claim upon which relief may be granted. To survive dismissal, a complaint "must contain sufficient factual matter" to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

---

[1] Courts take judicial notice of "documents that are part of the public record," like "transcripts from prior proceedings." *Gen. Elec. Capital Corp. v. Lease Res. Corp.,* 128 F.3d 1074, 1081–82 (7th Cir. 1997).

5

plausibility standard requires "more than a sheer possibility" of an entitlement to relief. *Id*. The court accepts all well-pleaded facts as true, but not conclusory allegations and legal conclusions. *Id*. If the court determines that amendment would be futile, it may dismiss the complaint with prejudice. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012).

## ARGUMENT

Acevedo alleges that he was arrested without legal justification, for exercising his First Amendment rights. Dkt. 1, ¶¶ 40-42, 45-53. Not so. He was arrested because the amplifier was "loud," *id.* ¶ 36, and he did not obey a police order to cease using it. Camera footage shows that, at various moments over almost 90 minutes, the amplifier was audible above a conversational level at over 100 feet away, *id.* ¶ 41; *e.g.*, Ex. 2 at 2:00-8:41, which—as Sergeant Zatora informed Acevedo—violated the City's amplified sound ordinance.

But even if Sergeant Zatora overestimated the volume of the amplifier and misapplied the ordinance, Acevedo has not alleged facts sufficient to state a plausible claim under the First or Fourth Amendment or IRFRA. *First*, Acevedo has not alleged a basis for municipal liability, so his section 1983 claims against the City should be dismissed. *Second*, count I should be dismissed because Acevedo has not even shown that defendants improperly enforced the sound amplification ordinance against him, let alone violated his First Amendment rights by preventing him from broadcasting on the public way near a health clinic, and Sergeant Zatora is entitled to qualified immunity in any event. *Third*, count III should be dismissed because there was probable cause for Acevedo's arrest, and Sergeant Zatora was at minimum reasonable in thinking there was, and is thus entitled to qualified immunity for this claim, too. *Fourth*, count IV fails because Acevedo was not arrested in retaliation for protected conduct, but because he violated the MCC. *Fifth*, Acevedo's IRFRA claim in count II fails because he alleges no substantial burden on his religious exercise, and the Illinois Tort Immunity Act bars his damages claim.

6

## I. Acevedo Alleges No Basis For Municipal Liability (Counts I, III, IV).

At the outset, Acevedo's section 1983 claims against the City fail because he alleges no basis for municipal liability. A municipality is not vicariously liable for an employee's constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, it is liable only for its own conduct that causes a constitutional violation, as manifested through (1) an express policy, (2) a widespread, though unwritten, custom or practice, or (3) a decision made by a final policymaker. *See Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 826 (7th Cir. 2022).

The complaint describes no City policy that injured Acevedo. The only express City policy mentioned is MCC § 8-32-070, which he does not challenge. Acevedo does not allege that Sergeant Zatora acted pursuant to an unwritten custom or was a final policymaker (and he is not). *See Waters v. City of Chicago*, 580 F.3d 575, 582 (7th Cir. 2009) (explaining that City Council sets policy by ordinance, and only an express grant of authority by ordinance makes an official a final policymaker). Nor does Acevedo allege that he was harmed by a City custom or practice. A "single incident," like Acevedo describes, will not establish a custom or practice. *Calusinski v. Kurger*, 24 F.3d 931, 936 (7th Cir. 1994); *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 841-42 (N.D. Ill. 2020) ("Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered."). With no City policy at issue, Acevedo's claims against the City should be dismissed.

## II. Acevedo Fails To Allege A First Amendment Violation (Count I).

Acevedo's complaint describes a disagreement with Sergeant Zatora over whether his amplifier was "louder than average conversational level at a distance of 100 feet or more." MCC § 8-32-070(a). Sound above that level, as Sergeant Zatora correctly told him, is allowed only as part of an approved public assembly or parade. *Id.* § -070(c). Acevedo believes his volume "was within the bounds of the law," Dkt. 1, ¶ 36. But the video evidence shows otherwise. Sergeant

7

Zatora's camera captured multiple times when Acevedo was audible well above conversational level from across La Salle Drive. Despite the sergeant's repeated attempts to resolve the situation, Acevedo insisted on using the amplifier, violating a police order. That led to his arrest. In sum, Sergeant Zatora properly enforced MCC § 8-32-070. But as explained below, even had Acevedo complied with the ordinance, and Sergeant Zatora been mistaken, Acevedo fails to allege a First Amendment violation, and the sergeant is entitled to qualified immunity.

### A. Acevedo's arrest did not violate the First Amendment.

The flaw in Acevedo's First Amendment claim is that he conflates whether Sergeant Zatora misinterpreted MCC § 8-32-070 with whether the sergeant violated the First Amendment. "[L]ocal government does not violate the federal Constitution just because it violates a state or local law." *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002); *see also Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws.") (cleaned up). Instead, the First Amendment framework applicable to sound restrictions is that which addresses restrictions on the time, place, and manner of speech. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Time, place and manner restrictions must further a substantial governmental interest, be content-neutral and leave ample alternative channels of communication." *Stokes v. City of Madison*, 930 F.2d 1163, 1170 (7th Cir. 1991). Limiting the volume of Acevedo's amplification on the public way furthered a substantial interest, was not based on his message's content, and left him ample other ways to communicate that message.

The City's interest in avoiding noise disturbances to the public is substantial. For example, an amplifier that can be heard from 100 feet away can affect neighboring building residents' quiet enjoyment of their homes. And in this instance, the City's interest in ensuring that patients receive counseling and medical services and access care in a peaceful environment

8

without undue disruption is also a substantial one; excessive noise outside a clinic could interfere with clinic operations and patients' well-being. Such interests are routinely held to justify noise restrictions. *E.g.*, *Kovacs v. Cooper*, 336 U.S. 77, 88 (1949) ("The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience."). The sound amplification ordinance is content-neutral. And as the evidence shows, Acevedo was permitted to convey his message through alternative means, with his unamplified voice, signs, and leaflets, just as his fellow protestors did. CPD did not stop them from expressing their message; officers only asked them to comply with the MCC. Thus, restricting Acevedo's use of the amplifier was a valid time, place and manner restriction and did not violate his First Amendment rights.

**B.      Sergeant Zatora is entitled to qualified immunity.**

Acevedo's First Amendment claim against Sergeant Zatora in his individual capacity may be dismissed for the independent reason that he is entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). As officers must make split-second decisions in stressful circumstances, qualified immunity protects them from liability for reasonable mistakes. "Put simply, qualified immunity protects "all but the plainly incompetent or who knowingly violate the law." *Id.* (cleaned up). When "the defense of qualified immunity is raised, it becomes the plaintiff's burden to defeat it." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012). The plaintiff must point to "factually similar" precedent demonstrating that the right was clearly established at the time of the alleged violation

or show that "the alleged constitutional violation was obvious." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015). And courts are not to "define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (cleaned up).

Here, Sergeant Zatora's conduct did not violate Acevedo's rights. But in addition, it is not clearly established that preventing someone on the public way from using an amplifier audible across a wide City street violates the First Amendment. Nor was it unreasonable for the sergeant to inform Acevedo the amplifier violated the MCC, drive back to the station to print a copy of the ordinance for him, and arrest Acevedo only after he insisted on *reading the ordinance into the amplifier*, defying multiple requests to stop. Rather, a reasonable officer would interpret the law to permit Acevedo's arrest. The sergeant's conduct was hardly "plainly incompetent"; it exemplified restraint. Count I against Sergeant Zatora should be dismissed.

**III.     Acevedo Fails To Allege A Fourth Amendment Violation, And Sergeant Acevedo Is Entitled To Qualified Immunity (Count III).**

Probable cause is "an absolute defense to any claim under [s]ection 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). It exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge" would lead "a prudent person, or one of reasonable caution," to think an offense has been or is about to be committed. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (cleaned up). Because probable cause is determined from the view of "a reasonable person in the position of the officer," *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011), the officer's state of mind is irrelevant (except for the facts he knows), *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), and "probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges," *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007).

Here, Acevedo was arrested for violating MCC §§ 8-32-070 and 8-4-010(e). An ordinance violation provides probable cause to arrest. *See People v. Taylor*, 902 N.E.2d 751, 759 (Ill. App. 2009) (arrest based on MCC violations constitutional); 65 ILCS § 5/1-2-1.1 (ordinance violations may be classified as criminal offenses). As explained above, the evidence shows that Acevedo violated MCC § 8-32-070 by using an amplifier audible above average conversational level from 100 feet away. Consequently, Sergeant Zatora had probable cause to arrest him. And Acevedo violated MCC § 8-4-010(e) by disobeying an order to stop using the amplifier. Sergeant Zatora was clearly acting as a peace officer. The sergeant was attempting to avoid a situation that would threaten public safety: he asked Acevedo not to "escalate the situation" and told him that "we not going to put a circus over here." Ex. 4 at 3:16-3:32. Thus, Acevedo disobeyed "an order by a peace officer . . . issued under circumstances where it is reasonable to believe that the order is necessary to allow public safety officials to address a situation that threatens the public health, safety, or welfare," so there was probable cause to arrest him for violating MCC § 8-4-010(e).[2]

At minimum, Sergeant Zatora is entitled to qualified immunity for Acevedo's Fourth Amendment claim. When a qualified immunity defense to a false arrest claim is raised, courts "review to determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir. 1995). Courts refer to the second inquiry as

---

[2] Probable cause, or arguable probable cause, also existed to arrest Acevedo for a state-law disorderly conduct violation. "[A] person commits disorderly conduct when he or she knowingly . . . does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Disorderly conduct requires that a "defendant knowingly engaged in conduct that (1) was unreasonable, (2) alarmed or disturbed another, and (3) provoked a breach of the peace." *People v. McLennon*, 957 N.E.2d 1241, 1249 (Ill. App. 2011). "The offense of disorderly conduct embraces a great variety of conduct destroying or menacing public order and tranquility." *City of Chicago v. Wender*, 262 N.E.2d 470, 472 (Ill. 1970); s*ee, e.g.*, *City of Chicago v. Morris*, 264 N.E.2d 1, 4 (Ill. 1970) (defendant argued loudly with an officer, ignoring arrest warnings, while crowd gathered); *People v. Albert*, 611 N.E.2d 567, 569 (Ill. App. 1993) (defendant was yelling and screaming outside at 2:00 a.m., waking neighbor); *People v. Rolfe*, 244 N.E.3d 236 (Ill. App. 2024) (defendant used siren and bullhorn).

11

whether the officer had "arguable probable cause." *E.g.*, *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013). Arguable probable cause exists when an officer could have reasonably even if mistakenly believed that probable cause existed. *Id.* Here, it was certainly reasonable—given that Sergeant Zatora could hear Acevedo's amplifier from across La Salle Street—to think that the amplifier violated MCC § 8-32-070, just as it was reasonable to think that Acevedo was in violation of MCC § 8-4-010(e) when he refused to follow police instructions to cease using it. Qualified immunity therefore shields Sergeant Zatora from Acevedo's false arrest claim.

## IV. Acevedo Fails To Allege A Retaliation Claim (Count IV).

To state a claim for First Amendment retaliatory arrest, Acevedo must allege that (1) he engaged in activity protected by the First Amendment; (2) he suffered an adverse action that would likely deter future First Amendment activity; and (3) the First Amendment activity was "at least a motivating factor" for the decision to retaliate. *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019). In *Nieves v. Bartlett*, the Supreme Court held that "probable cause should generally defeat a retaliatory arrest claim." 587 U.S. 391, 407 (2019). Here, Acevedo's retaliation claim fails because there was probable cause for his arrest.

The *Nieves* Court acknowledged a "narrow qualification" where a plaintiff was "arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*; *see also Lund v. City of Rockford*, 956 F.3d 938, 948 (7th Cir. 2020). That does not apply here, as Acevedo has not alleged that other individuals engaged in the same type of unlawful activity, but not the same speech, routinely avoid arrest. Indeed, his complaint shows just the opposite. He alleges that his entire group was on scene to "engage with the public on the religious, social, and political ramifications of abortion." Compl. ¶ 26. The other members engaged in speech like his but were not arrested. Thus, Acevedo was plainly arrested not because of his *speech*, but because he violated the MCC, and they did not. Given those facts, it is not

plausible that the arrest was in retaliation for Acevedo's speech. Defendants tolerated his message. What they did not tolerate were his MCC violations. Count IV should be dismissed.

Additionally, Acevedo's conduct in using an amplifier in violation of the MCC was not protected speech. "Although First Amendment activity is generally protected, it loses its protection when it violates the law." *Lund*, 956 F.3d at 947. Acevedo contends that he was arrested for his "lawful attempt to assert his rights under the Constitution and under the ordinance to use voice amplification for his speech and exercise of his religion." Compl. ¶ 92. But as explained, the MCC barred his use of such loud amplification. Accordingly, Acevedo's conduct in using the amplifier was not protected expression, and he cannot plead a retaliatory arrest claim. *See Lyberger v. Snider*, 42 F.4th 807, 814 (7th Cir. 2022) (because withholding ID from police officer was not protected speech; plaintiff could not prevail on a retaliation claim).

## V. The Court Should Dismiss Acevedo's IRFRA Claim (Count II).

Acevedo's claim that Defendants violated IRFRA in enforcing MCC § 8-32-070 fails. And his claim for "compensation," *see* Dkt. 1, ¶ 81, is further barred by the Tort Immunity Act.

### A. Count II fails because Acevedo alleges no substantial burden.

IRFRA creates a right of action when a government action "substantially burden[s] a person's exercise of religion," "even if the burden results from a rule of general applicability." 775 ILCS 35/15. "[A] substantial burden on one's free exercise of religion is the presentation of a coercive choice of either abandoning one's religious convictions or complying with the governmental regulation." *Diggs v. Snyder*, 775 N.E.2d 40, 44 (Ill. App. 2002) (citing *Wisconsin v. Yoder*, 406 U.S. 217-18 (1972)). "[A] plaintiff must demonstrate that the governmental action 'prevents him from engaging in conduct or having a religious experience that his faith mandates.'" *Id.* (quoting *Stefanow v. McFadden*, 103 F.3d 1466, 1471 (9th Cir. 1996)).

The standard for a IRFRA claim is the same standard used to evaluate the substantial burden provision in the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. *See Affordable Recovery Hous. v. City of Blue Island*, 860 F.3d 580, 583 (7th Cir. 2017). The Seventh Circuit has cautioned that "the adjective 'substantial' must be taken seriously," *World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009), and means that an obstacle renders religious exercise "effectively impracticable," *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

Acevedo does not allege that his religion mandates he use sound amplification, nor does he allege that Sergeant Zatora's enforcement of MCC § 8-32-070 required him to choose between exercising his religion or abandoning it. He alleges that "[h]e needs voice amplification to be heard over the noise of Chicago streets," and without amplification "he would need to raise his voice to be understood by passersby, which would distort the tone of his message." Dkt. 1, ¶ 72. But that falls short of showing that "he was required by the basic tenets of his religion" to use an amplifier to protest at the Planned Parenthood. *See Diggs*, 775 N.E.2d at 45. Indeed, videos show that his fellow students engaged in the same activity without amplifiers.

Acevedo also fails to explain how Sergeant Zatora's *enforcement* of MCC § 8-32-070 could substantially burden his exercise of religion when he concedes that the ordinance is valid. He does not allege that MCC § 8-32-070 is a substantial burden on religious exercise; he claims only that Sergeant Zatora substantially burdened his religious exercise by enforcing it. *See* Dkt. 1, ¶¶ 74, 75. But if the ordinance does not violate IRFRA, then neither can its enforcement. For this reason, too, Acevedo has not alleged any substantial burden on his religious exercise resulting from Defendants' actions.

Courts have discretion to retain jurisdiction over pendent state-law claims after federal claims are dismissed. *Groce v. Eli Lilly & Co*, 193 F.3d 496, 501-02 (7th Cir. 1999). Retaining

jurisdiction to dismiss state-law claims with prejudice is appropriate when it is "absolutely clear" how they should be decided. *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Here, as Acevedo alleges no substantial burden, Count II should be dismissed with prejudice.

### B. The Tort Immunity Act bars Acevedo's state-law claim for damages.

The Tort Immunity Act covers "any action, whether based upon the common law or statutes or Constitution of this State." 745 ILCS 10/8-101(c); *see Separation of Hinduism from Our Sch. v. Chi. Pub. Sch. Dist. #299*, No. 20 C 4540, 2021 WL 2036536, at *14 (N.D. Ill. May 21, 2021) (applying Act's limitations period to IRFRA claim). The Act renders public employees immune from liability for any "act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The City is not liable if its employees are not liable. *Id.* 10/2-109.

Here, Sergeant Zatora was enforcing the law when he arrested Acevedo. And his actions were not willful and wanton. Conduct is willful and wanton if it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." *Id.* 10/1-210. Sergeant Zatora's actions—arresting Acevedo only after showing Acevedo the ordinance and Acevedo refused to comply—were reasonable and far from willful and wanton. Furthermore, an officer does not engage in willful and wanton conduct when, as here, he acts out of concern for the safety of others or to protect the public. *Breck v. Cortez*, 490 N.E.2d 88, 94 (Ill. App. 1986). Acevedo's damages claim is based on Sergeant Zatora's actions to enforce the law, which were not willful and wanton, so it is barred.

### CONCLUSION

The Court should dismiss Acevedo's claims under Rule 12(b)(6) with prejudice.

| | |
|---|---|
| Date: March 4, 2025 | Respectfully submitted, |
| ELLEN W. MCLAUGHLIN<br>City of Chicago Department of Law<br>Constitutional and Commercial<br>  Litigation Division<br>ERIC SEELEMAN<br>City of Chicago Department of Law<br>Federal Civil Rights Litigation Division<br>2 North LaSalle Street, Suite 520<br>Chicago, Illinois 60602<br>(312) 742-5147 / 742-3902<br>Ellen.McLaughlin@cityofchicago.org<br>Eric.Seeleman@cityofchicago.org<br>*Attorneys for the City of Chicago and Sergeant Tomasz Zatora* | MARY B. RICHARDSON-LOWRY,<br>Corporation Counsel for<br>  the City of Chicago<br><br>By:   /s/ Ellen W. McLaughlin<br>         Chief Assistant Corporation Counsel |