## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ETHAN ACEVEDO,

Plaintiff,

v.

Case No. 1:24–cv–12654

SERGEANT TOMASZ ZATORA, et al.,

Honorable Georgia N. Alexakis

Defendant.

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

---

Plaintiff Ethan Acevedo submits this memorandum in opposition to Defendants' Motion to Dismiss. Defendants misapply the Rule 12(b)(6) standard by asking the Court to draw factual inferences in their favor and to accept their justifications for arresting Ethan as conclusive. But at this stage, the question is not whether Sgt. Zatora in fact had probable cause, or whether his actions were reasonable—it is whether Ethan's well-pleaded allegations plausibly support that the Defendants violated his constitutional and statutory rights. They do. Ethan's Complaint adequately states claims under the First and Fourth Amendments and the Illinois Religious Freedom Restoration Act. The motion should be denied in full.

### LEGAL STANDARD

1.    "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits." *Jordan v. Bonano*, 636 F. Supp. 3d 924, 928 (N.D. Ill. 2022). The Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Id.* The complaint survives the motion if its claims are plausible on their face, which they are if they

1

permit the reasonable "inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

## I. THE DEFENDANTS' ARGUMENTS BASED ON "PROBABLE CAUSE" OR ETHAN'S VOLUME FAIL BECAUSE THEY REQUIRE FACT INFERENCES IN THEIR FAVOR.

2.      In their motion, the Defendants base several arguments on their own assertions that Sgt. Zatora had probable cause to arrest Ethan because Ethan's amplified volume was higher than permitted. This fatal error is the backbone of the Defendants' arguments against Ethan's Counts I, III, and IV. Dkt 45 at 9, 10, 12.

3.      Each of these arguments gets the Rule 12(b)(6) standard backwards. They require Ethan, as the Plaintiff, to disprove the defendants' allegations at the pleading stage, and they require the Court to make factual inferences in the movants' favor. Both these errors contaminate Defendants' reasoning throughout their Motion. By failing to address whether Ethan's allegations, taken as true, permit the reasonable inference that the Defendants are liable for the misconduct alleged, the Defendants effectively concede that Ethan *has* stated a facially plausible claim. The Court should therefore deny their Motion as to Counts I, III, and IV.

### a) Evaluating probable cause is premature.

4.      The reason that evaluating probable cause is unsuitable for deciding a motion to dismiss is that it requires the Court to objectively examine the facts as they were known to the arresting officer and to determine what conclusions he could have reasonably drawn from those facts. See *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). This necessarily requires weighing evidence and making

inferences. But Ethan's case is at the pleading stage, when the Court should make all reasonable inferences in his favor and construe facts against the movants.

5.     Case law illustrates that courts disfavor probable cause arguments at the dismissal stage. In *Jordan v. Bonano*, a court in this district denied two state troopers' motion to dismiss a false arrest claim because the plaintiff in that case had "plausibly alleged facts that suggest the Troopers 'consciously disregarded information' that would have clarified the situation and negated probable cause." 636 F. Supp. 3d 924, 930–31 (N.D. Ill. 2022). The court noted that the "highly fact-based nature of [probable cause] arguments is more amenable to resolution at a later stage after discovery has allowed for a clearer picture of the events." *Id.* (internal quotation marks, citation omitted).

6.     The court in *Higgins v. Vill. of Lyons*, 661 F. Supp. 3d 816, 821 (N.D. Ill. 2023) came to the same conclusion regarding a defendant's use of probable cause as basis for a 12(b)(6) motion. In so doing, that court examined several cases (*Jordan v. Bonano* among them) to illustrate why arguing the merits of probable cause is premature at the dismissal stage. *Id.*

7.     The same factors apply here. The Court is merely discerning whether Ethan's allegations meet the *Iqbal* standard. The Defendants' argument unhelpfully raises a factual issue—the legality of Ethan's volume and the justifiability of Sgt. Zatora's decision to arrest Ethan—which the Defendants ask the Court to decide in their favor. This would be inappropriate, as it does not get at the issue: whether Ethan has plausibly alleged a claim.

8.     Similarly, the Defendants' probable cause and volume arguments imply that the Plaintiff has the burden of disproving the factual allegations of the Defendants. This, too, is backwards. The only relevant question at this point is whether Ethan's Complaint alleged just enough facts to permit the reasonable inference that the Defendants are liable for the misconduct alleged, namely that Sgt. Zatora silenced Ethan by illegally arresting him (and according to unofficial City policy).

   **b) Ethan's allegation that Sgt. Zatora did *not* have probable cause outweighs the Defendants' denial-by-any-other-name of Ethan's allegation.**

9.     Ethan has in fact alleged a claim for deprivation of his constitutional rights: he alleged that Sgt. Zatora knew what the law concerning amplification was (Dkt 1 at ¶¶47–48); he alleged that Sgt. Zatora nevertheless incorrectly told Ethan that the ordinance forbade amplification (Dkt 1 at ¶¶41, 49); and he alleged that Sgt. Zatora disregarded the fact that Ethan was allowed under the ordinance to use amplification when he arrested Ethan (Dkt 1 at ¶50).

10.    Taken as true, and with reasonable inferences made in his favor, Ethan's allegations plausibly support that Sgt. Zatora "consciously disregarded information that would have clarified the situation and negated probable cause" when he arrested Ethan. *Jordan*, 636 F. Supp. 3d at 931 (internal quotation marks omitted).

11.    Rhetorically it may be clever for the Defendants to keep repeating that Ethan was too loud and that Sgt. Zatora had probable cause to arrest him, but this hinders more than helps the Court's proper analysis, which at this point solely should be whether Ethan reached the *Iqbal* plausibility baseline.

12.    The reliance of Defendants' arguments that Ethan was too loud infects their

qualified immunity arguments, too. *See* Dkt 45 at 10 ("a reasonable officer would interpret the law to permit Acevedo's arrest") and 12 ("it was reasonable. . . to think that the amplifier violated MCC § 8-32-070").

13.    The same is true of the Defendants' flimsy "disorderly conduct" grounds for probable cause. Dkt. 45 at 11, 12 ("it was reasonable to think that Acevedo was in violation of MCC § 8-4-010(e). . ."). To agree with the Defendants, the Court would have to infer that Sgt. Zatora ordered Ethan to cease amplification "under circumstances where it is reasonable to believe that the order is necessary to allow public safety officials to address a situation that threatens the public health, safety, or welfare." MCC § 8-4-010(e). Ethan certainly didn't allege such circumstances in his Complaint, except as created by the officers themselves. *See* Dkt 1 at ¶ 38 (Sgt. Zatora's prophecy "we are causing more problems by being here").

14.    And the same is true for Defendants' argument in their footnote 2 that Ethan's arrest could be justified based on 720 ILCS 5/26–1(a)(1): inferences in the Defendants' favor would have to be made. Dkt 45 at 11.

15.    In the end, the Defendants' arguments about Ethan's volume, about probable cause, and even about qualified immunity are mere denial of Ethan's allegations. They all require the Court to accept as true the *Defendants'* allegations in opposition to what the Plaintiff has pleaded.[1]

16.    Concerning the video footage, the Defendants cannot find support for their

---

[1] Discussion of Ethan's volume in the first place ignores the reality that Sgt. Zatora arrested Ethan for his use of amplification *per se*, not because it was too loud. The amplification volume argument is post hoc rationalization and should not be taken seriously.

probable cause and volume arguments there, either. Where factual inferences are made against the movant as they are here, video will only help the movant "when the video is so definitive that there could be no reasonable disagreement about what the video depicts." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023). Judge Panarese of the Circuit Court of Cook County did not think the video supported the Defendants' present contention that Ethan was too loud. *See* Dkt. 25-5 at 11 (Report of Proceedings, *People v. Acevedo*, 24-MC1-199522).

## II. TAKEN AS TRUE WITH ALL REASONABLE INFERENCES IN HIS FAVOR, ETHAN'S ALLEGATIONS DO NOT SHOW THAT SGT. ZATORA IS ENTITLED TO QUALIFIED IMMUNITY.

17.     The Defendants argue that Sgt. Zatora is entitled to qualified immunity as to Ethan's Counts I and III based on *Ethan's* conduct (speech, really). Dkt 45 at 10, 12. This is doubly inappropriate for deciding qualified immunity at the pleading stage: "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018) (emphasis in original).[2]

18.     Qualified immunity, much like probable cause, is "rarely appropriately resolved at the motion-to-dismiss stage" because of its fact-intensive nature, *Higgins*, 661 F. Supp. 3d at 823, and a defendant raising qualified immunity at the dismissal stage faces an even tougher standard than at summary judgment. *Reed*, 906 F.3d at 549. Thus, the Defendants' attempt to get Ethan's Counts I and III dismissed on

---

[2] The two-part test outlined in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) and *Surita v. Hyde*, 665 F.3d 860, 868 (7th Cir. 2011) discussed in Plaintiff's motion for injunctive relief (Dkt 4), is not used at the pleading stage. That would be for summary judgment or trial.

qualified immunity grounds faces an extremely steep hurdle. The Defendants do not overcome it. Here is why:

19.     Ethan has alleged that the law was clear, that Sgt. Zatora knew the law, and that Sgt. Zatora arrested Ethan anyway without justification. Dkt 1 at ¶¶41, 47–50. There is no room in Ethan's allegations—unless they are not taken as true or inferences are made against him—to find that Sgt. Zatora reasonably made a split-second judgment call under pressure where the law was not clear. That would simply be the opposite of what Ethan alleged. It was the very *un*reasonable-ness of Sgt. Zatora's arrest for which Ethan filed this suit against him and the City.

20.     Again, at this stage, it is *Sgt. Zatora's* conduct, not Ethan's, that is evaluated for reasonableness in the light most favorable to the Plaintiff. *See Reed*, 906 F.3d at 549. Neither the Defendants' assertion of Ethan's volume nor what the Defendants characterize as Ethan's "refus[al] to follow police instructions," Dkt 45 at 13, find unambiguous support in Ethan's allegations. Qualified immunity, therefore, does not entitle Sgt. Zatora to dismissal of the claim against him. The Defendants' Motion should be denied.

### III.    ETHAN HAS ALLEGED A SUBSTANTIAL BURDEN UNDER THE IRFRA.

21.     Illinois courts define a "substantial burden" as government coercion that forces an adherent to modify or abandon his religious exercise. *Diggs v. Snyder*, 333 Ill. App. 3d 189, 195 (2002).

22.     The Defendants contend that Ethan's religious exercise was not substantially burdened by the choice between using amplification and being arrested. Accepting

this contention requires believing that speaking itself is interchangeable with other forms of communication. That would be incorrect. Medium and message are so closely connected that Marshall McLuhan coined the adage that "the medium is the message." *Understanding Media: The Extensions of Man* at 7–21 (McGraw-Hill 1964). This is to say that the "how" of a message itself determines *what* is communicated, a reality not lost on the Supreme Court. *See City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994) ("A sign advocating 'Peace in the Gulf' in the front lawn of a retired general or decorated war veteran may provoke a different reaction than the same sign in a 10–year–old child's bedroom window or the same message on a bumper sticker of a passing automobile").

23.     The Rev. Martin Luther King Jr.'s famous refrain "I have a dream" was immortalized in oration. It was not a placard or a cereal box slogan; though it could have fit on both, its character would have been fundamentally changed. One means of communication is not simply interchangeable with another because medium is determinative of perception, scale, immediacy, and audience.

24.     And yet, the Defendants argue that Ethan could have engaged in his religious practice perfectly well without amplification. Dkt 45 at 15 ("Indeed, videos show that his fellow students engaged in the same activity without amplifiers"). Why, no, Ethan's fellow students were engaged in a fundamentally *different* activity because they were not using an amplifier. Had the Rev. Martin Luther King Jr. only held up a placard that read "I have a dream," the remainder of his speech would simply vanish—and with it, so would the power of his immortal refrain.

25. The Defendants then suggest that voice amplification is not "required by the basic tenets of [Ethan's] religion," *Diggs*, 333 Ill. App. 3d at 195. Ethan's religion does not require voice amplification for its own sake, but it requires him to proclaim the Word of God to the citizenry. Ethan alleged in his Complaint that his religious purpose on March 30, 2024, was to engage in "evangelistic outreach, speaking with Chicagoans about Christian religion and its import for them and the public at large," Dkt 1 at ¶17, and to "to engage with the public on the religious, social, and political ramifications of abortion." Dkt 1 at ¶26. He also alleged that he was "motivated by a sincerely held religious belief to share a message of hope and help for women with unwanted pregnancies and for their unborn children, and to inform them that there are good alternatives to abortion." Dkt 1 at ¶18.

26. Ethan's selection of street preaching by amplification rather than by unamplified voice or Twitter, i.e. his *choice of medium*, conveys at least four religiously-mandated embedded messages: a) urgency and public importance; b) a herald-like or even prophetic stance (as distinct from private conversation); c) an intent to reach even those who will not draw near; and d) solidarity with the long tradition of open-air proclamation as practiced by Jesus and later the apostles.

27. In downtown Chicago's sonic environment, an unamplified speaker becomes (literally) inaudible beyond a few feet. That transforms Ethan's activity from public proclamation into private muttering or shouting. The communicative content is not merely reduced; it is qualitatively altered: the prophetic tone and reach disappear; the act no longer challenges passers-by in real time; and the religious symbolism

9

inherent in street preaching is gutted.

28. Ethan therefore suffered a substantial burden because Sgt. Zatora forced Ethan to abandon his religious exercise. *See Diggs,* 333 Ill. App. 3d 195. Communication by a particular medium *was* the religious exercise—imagine Billy Graham without tent revivals—and compelling Ethan to abandon amplification compels him to modify his message on pain of arrest and prosecution. This is the "coercive choice" *Diggs* condemns.

29. Taking as true Ethan's allegation that his religious purpose was to speak with the public and making all reasonable inferences in his favor, Ethan's Complaint has sufficiently alleged that his open-air speaking—not merely communicating in some way—was his religious exercise. Because Ethan has alleged that the Defendants' conduct rendered this conduct effectively impracticable, the Defendants' Motion as to Count II should be denied.

30. Lastly, the Defendants' assertion that "if [MCC § 8-32-070] does not violate IRFRA, then neither can its enforcement" completely misses the point that the ordinance *allows* amplification. Dkt 45 at 15. Ethan does not take issue with the ordinance but with the Defendants' improperly using it to justify illegally arresting and silencing him.

## IV.  THE ILLINOIS TORT IMMUNITY ACT DOES NOT BAR ETHAN'S IRFRA CLAIM.

### a) Ethan is seeking not only damages but also injunctive relief under IRFRA.

31. The Defendants argue that Ethan's IRFRA claim should be dismissed because the Tort Immunity Act bars his claim for damages. Without conceding that point,

10

Ethan highlights that he is *also* seeking injunctive relief under IRFRA. Even supposing the Defendants were correct about the Tort Immunity Act's barring IRFRA damages, this would not be a reason to dismiss the IRFRA claim when Ethan explicitly seeks injunctive relief thereunder?

    **b) Neither Illinois courts nor the Seventh Circuit have categorically held that the Tort Immunity Act bars IRFRA damages claims against individual government actors and municipalities.**

32.    Plaintiff has not found any binding cases that state the Tort Immunity Act bars IRFRA damages claims. The case cited by the Defendants, *Separation of Hinduism from Our Scho. V. Chi. Pub. Sch. Dist. #299*, 2021 WL 2036536, is not binding on this Court.

33.    Another court in this district examined the issue of damages against a municipality under IRFRA, but it found no cases "that address[ ] whether the Tort Immunity Act bars a plaintiff from recovering damages against a local governmental entity under the IRFRA." *Am. Islamic Ctr. v. City of Des Plaines*, 32 F. Supp. 3d 910, 916 (N.D. Ill. 2014). If anything, that court found that another case, *Family Life Church v. City Of Elgin,* 561 F.Supp.2d 978 (N.D.Ill.2008), which suggested that "IRFRA could be read to trump the Tort Immunity Act" because 775 ILCS 35/25(a) states that IRFRA "applies to all State and local (including home rule unit) laws, ordinances, policies, procedures, practices, and governmental actions and their implementation, whether statutory or otherwise and whether adopted before or after the effective date of this Act." *Family Life Church*, 561 F.Supp.2d at 992.

    **c) Ethan's allegations permit the reasonable inference that Sgt. Zatora's conduct was willful and wanton.**

34.     Here again, the Defendants rely on inference favorable to them. Sgt. Zatora's conduct—if the facts alleged in Plaintiff's Complaint are taken as true and viewed in a light most favorable to the Plaintiff—can easily be found willful and wanton, because the facts Ethan alleged permit the reasonable inference that Sgt. Zatora "show[ed] actual or deliberate intention to cause harm or . . . show[ed] an utter indifference to or conscious disregard for" Ethan's safety." Unlike in the Defendants' implication that Sgt. Zatora acted "out of concern for the safety of others or to protect the public," Dkt 45 at 16, Sgt. Zatora himself recognized that "We are causing more problems by being here." Dkt 1 at ¶38.

35.     As with probable cause, accepting the Defendants' argument requires construing the facts against Ethan, which is backwards at the pleading stage. The Defendants' Motion should be denied.

## V.     THE COURT SHOULD NOT DISMISS ETHAN'S CLAIMS AGAINST THE CITY BECAUSE ETHAN HAS ALLEGED FACTS THAT MAKE MUNICIPAL LIABILITY PLAUSIBLE.

36.     The City argues that Ethan's complaint "alleges no basis for municipal liability." If alleging municipal liability requires using the words "practice," "custom," or "policy" in the Complaint, then the City might be on to something. *See Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir. 2014).

37.     Instead, federal courts evaluate the substance of the pleadings rather than their form or labels. *Id*. A complaint against a municipality is sufficient if it alleges facts that could plausibly support municipal liability under an unofficial policy, practice, or custom theory—even without that specific jargon. After all, the Court is

deciding a motion to dismiss filed by the Defendants. The Court need only examine whether the Plaintiff's factual allegations, taken as true, make it *plausible* that Ethan was arrested pursuant to an unofficial policy or practice by the City.

38.     Here, Ethan's Complaint contains factual matter supporting that the City has an unofficial policy or practice for dealing with a street preacher using amplification:

39.     **Coordinated action among multiple officers**: Multiple CPD officers observed the scene, witnessing the amplification and interacting with the plaintiff and others *without incident for over an hour*. Dkt 1 at ¶22, ¶30–33, ¶34–36, ¶43. This suggests that Ethan's later arrest was not a simple misjudgment but part of a deliberate shift in enforcement strategy. And Officer Hardy initiated a meeting with officers during which **all officers were made to turn off their body cameras** so that Officer Hardy could "speak freely"—mere minutes before Ethan's arrest. Dkt 1 at ¶43. This strongly supports a theory of coordinated unconstitutional conduct and a de facto custom or unwritten policy for avoiding accountability when suppressing free speech.

40.     **Suppression of First Amendment activity despite no legal basis**: Sgt. Zatora presented Ethan with a City ordinance that did **not** prohibit amplification, but he immediately arrested Ethan for using amplification—without *ever* mentioning volume to Ethan. Dkt 1 at ¶40–41, ¶47–50. Perhaps Sgt. Zatora assumed the City would back him up. He was right. No allegations in the complaint or otherwise suggest that any officer questioned the arrest, and the City's prosecuting attorney did not drop the prosecution even after being presented with video evidence. The point

now is not to prove malicious prosecution; rather it is that several City officials with discretion followed the same course of action: attempting to criminalize Ethan's use of amplification for religious and political speech.

41.     **Retconned justification for arrest**: Officers did not tell Ethan why he was arrested; instead, justification given later was inconsistent with the ordinance and with the officers' prior conduct where no one confronted Ethan concerning *volume*. Dkt 1 at ¶52–53.

42.     Since Ethan filed his lawsuit, even more evidence of the City's practice of intimidating and arresting street preachers for using amplifiers—not for volume— has come to light. *Raio et al v. City Of Chicago et al.*, Case No. 1:25-cv-02709 was brought to the Court's attention in Plaintiff's Notice of Related Case, Dkt 50. That case concerns no less than *three* street preachers who, like Ethan, used amplification on Chicago sidewalks and were therefore harassed, intimidated, and arrested by Chicago police. Two of the Raio plaintiffs were held in jail, just like Ethan, for about seven hours. *See Raio et al v. City Of Chicago et al.*, Case No. 1:25-cv-02709, document #1 at 6-8.

43.     These additional allegations supporting the City's liability under *Monnell* should be taken into account in deciding the Defendants' Motion to Dismiss. *See Teesdale v. City of Chicago*, No. 09 C 4046, 2010 WL 11712785, at *2 (N.D. Ill. Mar. 17, 2010) ("plaintiffs may assert additional facts in their response to the motion to dismiss" as long as "they are consistent with the allegations of the Complaint").

## VI. SUBSTANTIAL JUSTICE AND JUDICIAL ECONOMY WOULD NOT BE SERVED BY DISMISSING ETHAN'S CLAIMS AGAINST THE CITY

44.     The Court should not validate the City's attempted "gotcha" over Ethan merely because the latter did not use *Monnell* words in his Complaint. *See Edelman, LLC, 754 F.3d at 395*. Dismissing Ethan's counts against the City would hinder rather than promote the just and speedy resolution of this case.

45.     Ethan would be forced to seek this Court's leave under Rule 15(a)(2) to amend his Complaint, merely to satisfy a technicality that would tell the City what it already knows: that Ethan alleges that the City arrested him as part of an unwritten policy to arrest street preachers for using amplification (not for volume).

46.     This roundabout way of getting to the same place would be a waste of everyone's time. Justice and judicial economy would be better served by denying the Defendants' motion to dismiss Ethan's counts against the City.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ethan Acevedo respectfully requests that this Court enter an order denying the Defendants' Motion to Dismiss and for any other relief as this Court deems appropriate, including leave to amend Ethan's Complaint.

Respectfully submitted,

ETHAN ACEVEDO

/s/ *Robin Rubrecht*

_____
One of his attorneys

John W. Mauck (1797328)
Robin J. Rubrecht (6340970)
**MAUCK & BAKER, LLC**
1 N. LaSalle St. Suite 3150
Chicago, IL 60602
312-726-1243
jmauck@mauckbaker.com
rrubrecht@mauckbaker.com
Attorneys for Plaintiff

15