**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ETHAN ACEVEDO,<br>　　　　　　　　　Plaintiff,<br>　　　v.<br><br>SERGEANT TOMASZ ZATORA, in his individual capacity, and the CITY OF CHICAGO, an Illinois municipal corporation,<br>　　　　　　　　　Defendant. | Case No. 1:24−cv−12654<br><br>Honorable Georgia N. Alexakis<br><br>**JURY TRIAL REQUESTED** |

## PLAINTIFF'S MOTION TO AMEND JUDGMENT UNDER RULE 59(e)

Plaintiff Ethan Acevedo respectfully moves this Court under Federal Rule of Civil Procedure 59(e) to alter or amend its Memorandum Opinion and Order of May 11, 2026 (Dkt 87). Plaintiff requests this court to reconsider its ruling wherein:

a. the Court found that Plaintiff failed to allege *Monell* liability against the City,

b. the Court dismissed with prejudice Count I (free speech), and

c. the Court dismissed with prejudice Count IV (retaliatory arrest).

## LEGAL STANDARD

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59. A motion under Rule 59(e) is properly granted to correct a manifest error of law or fact, which includes misapplication of controlling precedent. *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015).

1

## ARGUMENT

1. On May 11, 2026, this Court issued its ruling on the Defendants' Motion to Dismiss. Plaintiff's present Motion was filed on June 8, 2026, within 28 days of the Court's ruling. This Motion is therefore timely under Rule 59(e).

## I. The "fair notice" ground is refuted by the Court's own analysis and disposition.

2. The Court held that Plaintiff's "shifting theories of *Monell* liability do not give the City fair notice of the municipal action at issue" and called this a "sufficient grounds" for dismissal. Dkt. 87 at 10. The Court's next paragraph refutes that finding.

3. The Court read the pleading, distilled it to a single governing formulation and adjudicated that formulation on its merits across the next seven pages. Dkt. 87 at 10–17 ("the City's alleged practice 'of preventing Christian street preachers … from using voice amplification on the public way by misapplying the noise ordinance to prohibit amplified religious speech … regardless of volume or compliance with the ordinance's actual requirements'"). Fair notice is measured by whether the defendant can identify the practice at issue and answer it. *See Christensen v. Cnty. of Boone, IL*, 483 F.3d 454, 458 (7th Cir. 2007)

4. A claim the Court could name in one sentence and resolve on the merits is a claim of which the City had notice. The City, for its part, argued against Plaintiff's claims by denying the similarities and relevance of Plaintiff's comparators and the events at issue in *Raio v. City of Chicago*, No. 25-cv-2709 (N.D. Ill.). (Dkt 69–1 at 10-13). A claim that draws a comprehensive attack on its merits has given notice of itself.

5. Moreover, to the extent Plaintiff's formulations of his *Monell* claim differ in

scope, Plaintiff's formulations are nested, not contradictory. The core allegation—that Chicago police hinder street preachers' use of amplification regardless of volume—runs through every version Plaintiff has pleaded. The broader phrasings ("and presumably others," "possibly other speech," Dkt 64 at ¶ 131) plead the practice's outer limits as a matter for discovery; the formulation the Court adopted is contained within them. That is to say, the superset (broadest formulation) is not contradicted by its subsets (as . And Rule 8(d) permits a party to plead alternative and even inconsistent theories. Treating permitted alternative pleading as a fatal defect would be error. To the extent that the Court dismissed Plaintiff's *Monell* claim on the basis of defective notice, the dismissal warrants reconsideration.

### The *Monell* dismissal rested on a misapplication of the Rule 12(b)(6) standard.

6. In its analysis wherein the Court dismissed Plaintiff's claim against the City, the Court erred by weighing Plaintiff's well-pleaded facts, drawing inferences against the pleader, and discarding relevant facts as unrelated based on those inferences.

7. As the Court is aware, a Rule 12(b)(6) motion requires the Court to accept well-pleaded facts as true and draw all reasonable inferences in the pleader's favor. *Christensen,* 483 F.3d at 458.

#### a) The Court ignored pleaded facts as allegations of the existence of another lawsuit.

8. Paragraphs 88–102 of the Amended Complaint plead facts, not the existence of a lawsuit: dates, names, locations, officer conduct, amplification volume measured by decibel meter against ambient noise, the charges brought against the evangelists,

and the dismissal of those charges. These are factual averments of police conduct, which the Court was required to take as true.

9.   The Court, however, set them aside under *Arquero*'s observation that "the existence of other lawsuits, without more, does not shed much light on the underlying facts." *Arquero v. Dart,* 587 F. Supp. 3d 721, 730 (N.D. Ill. 2022). But *Arquero* dismissed its Count IV because that plaintiff offered *only* the existence of other lawsuits, paired with his own experience. *Id.*

10.   That contrasts with the present case. Mr. Acevedo is in the posture of *Arquero*'s Count III, not its Count IV: he pleads the *underlying facts themselves*. That another lawsuit concerns those facts does not demote his allegations to bare accusation; a factual averment of officer conduct is taken as true regardless of its source.

11.   The Court's reading of *Arquero* here produces an absurd result. It leads to valid comparators becoming unusable to support *Monell* allegations merely because they are the subject of their own lawsuit. The truth of a well-pleaded fact does not turn on how the pleader learned it, and in any case, Rule 11(b)(3) authorizes pleading on information and belief. The question is only whether the facts "permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Savory v. Cannon,* 532 F. Supp. 3d 628, 639 (N.D. Ill. 2021) (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)).

12.   Here, Mr. Acevedo's allegations are not "[t]hreadbare recitals . . . supported by mere conclusory statements." "While [Plaintiff] will need to support his allegations in discovery, they suffice at the pleading stage to state a *Monell* claim." *Arquero,* 587 F.

Supp. 3d at 730. The allegations concerning that City's pattern of conduct are properly supported by the facts of the City's actions against Raio, Ndi, and Dhamala, and the Court's discounting of those allegations was error. That error, in turn, led the Court to improperly dismiss Mr. Acevedo's *Monell* claim against the City.

### b) The Court discarded probative facts by resolving their significance against the pleader.

13. Having adopted the formulation in the Amended Complaint's ¶ 131—misapplication of the noise ordinance regardless of volume—the Court used it to set aside Plaintiff's allegations that on other occasions where Plaintiff used amplification, officers yelled at him and expressed dislike of his viewpoint. The Court set these aside on the ground that those allegations were not "volume-related." Dkt. 87 at 13 n.2. But whether those facts are probative of the alleged *custom* is itself a question to be resolved for the pleader, not against him.

14. Allegations that officers' enforcement concerned the speaker and his message rather than the volume of his amplification bear directly on the character of the practice alleged in ¶ 131—enforcement against amplified religious speech "regardless of volume or compliance with the ordinance's actual requirements."

15. The Court compounded the conceptual gaps it created by demanding that each comparator incident independently replicate Plaintiff's full injury—a deprivation plus a no-probable-cause arrest—and faulting the incidents for falling short. That is not a requirement for inferring a pattern, as it raises the burden from plausible to likely. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 656 (7th Cir. 2021) (reasoning that *Monell* plaintiffs' evidentiary burdens generally require discovery for

claims to be sufficiently developed).

16. Measured against the custom as the Court conceptualized it, the incidents fit: in October 2024 officers told Plaintiff he was violating the ordinance, refused to explain how, and ordered the amplification shut off, with volume admittedly not at issue (Dkt. 64 ¶¶ 106–08); in the Papaioannou incident officers ordered the speaker shut off and refused his offer to lower the volume (Dkt. 64 ¶ 109). Each is an instance of officers enforcing the ordinance against amplified religious speech without regard to volume—the precise practice alleged. That none of Plaintiff's comparators culminated in an arrest goes to the strength of the pattern, a matter for discovery, not to whether the incidents are probative of the custom.

17. On a Rule 12(b)(6) motion the question is not whether the facts fully establish the pattern, nor whether the Court finds the pattern the most persuasive reading. The question is only whether the pattern is a *reasonable* inference from the facts pleaded. So long as it is, the inference must be drawn for Plaintiff, even where a competing inference—isolated, volume-driven enforcement—is also available, and even if the Court finds that competing inference more likely.

18. That an inference of a City custom was reasonable on the present facts is not a matter of speculation. On materially identical allegations concerning the same rights and the same enforcement conduct—and with less pleaded factual support— an Illinois Northern District court drew exactly that inference and sustained a *Monell* claim on that basis, holding that "[d]efendants ask too much of Plaintiffs at the pleading stage" and that the absence of "specific details of other individuals'

6

experiences does not warrant dismissal." *Raio v. City of Chicago*, No. 25 C 2709, 2026 WL 515703, at *5 (N.D. Ill. Feb. 24, 2026). "Discovery will uncover whether Plaintiffs can prove their *Monell* claims, but at the pleading stage, they have stated a plausible claim for relief." *Id.*

19.     By crediting the inference favorable to the City and rejecting the one favorable to the pleader, the Court applied the wrong standard, and the dismissal of the *Monell* claim should be reconsidered.

### c) The Court applied a subjective deterrence standard where the law requires an objective one.

20.     In assessing whether the comparator incidents involved deprivations similar to Plaintiff's own, the Court applied the wrong legal test. The deprivation element of First Amendment retaliation asks whether the challenged conduct "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021). That inquiry is objective; its subject is the hypothetical person of ordinary firmness, not the particular plaintiff before the court.

21.     The Court, however, found no deprivation in the comparator incidents because Plaintiff "appears undeterred" and Papaioannou "remains similarly undaunted." (Dkt. 87 at 16). That reasoning inverts the standard. It converts the plaintiffs' own steadfastness into evidence against their claims, with the perverse consequence that the more resolute the speaker, the less the First Amendment protects him. The question is not whether these speakers were in fact deterred, but whether the officers' conduct—ordering amplification silenced, threatening "repercussions," refusing to

measure volume—would deter a person of ordinary firmness. *FKFJ, Inc.,* 11 F.4th at 585.

22.    Here, the Court's error directly infected its *Monell* analysis. The Court used its no-deprivation finding to remove the October 2024 and Papaioannou incidents from the comparator pool, reasoning that incidents involving no deprivation could not establish a pattern of violations similar to Plaintiff's. (Dkt. 87 at 15–16). Once the correct objective standard is applied, those incidents supply precisely the similar deprivations the Court found absent, and the pattern the Court deemed too thin is restored. Application of the wrong legal standard is a manifest error of law warranting reconsideration. *Burritt,* 807 F.3d at 253.

23.    Under Rule 12(b)(6), the Court should have credited the Raio allegations and the additional occurrences involving Plaintiff and Mr. Papaioannou; inclusion of either in the comparator pool shows that Plaintiff plausibly pleaded a widespread custom by the City.

## II.    The dismissal of Count IV was manifest error.

24.    Manifest error includes the misapplication of controlling precedent. *Burritt,* 807 F.3d at 253. At the pleading stage the Court must accept the complaint's well-pleaded facts as true and draw every reasonable inference for the pleader. The Court instead resolved the disputed question of motive against Acevedo.

### a) The Court resolved the fact question of motive against the pleader.

25.    The Court held that the pleaded facts support "only" the inference that Sgt. Zatora arrested Acevedo for disobedience, not for protected activity. The motivating-

factor element of a retaliation claim is a question of fact. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019). To hold one inference exclusive where the complaint pleads facts supporting another is to weigh inferences. Under Rule 12(b)(6) the reasonable inference runs to the pleader even when a competing inference is available and the Court finds it stronger.

### b) Defining the protected activity as content alone reads the Complaint against the pleader and is therefore manifest error.

26.     A court resolving a Rule 12(b)(6) motion construes the complaint as a whole and draws every reasonable inference for the pleader. *Burritt*, 807 F.3d at 253. The Court here did the opposite. It selected paragraphs framing Mr. Acevedo's activity as his speech's content, declared that framing the operative one, and analyzed causation from it. The narrowing was the error, and the causation failure followed from the narrowing rather than from the facts read as a whole.

27.     The First Amended Complaint does not plead content alone. It alleges that Sgt. Zatora forbade amplification itself: that he told Mr. Acevedo "[t]here's an ordinance against" amplified sound, Dkt 64 at ¶48, and that "[y]ou cannot have any amplified sound on the public way that can be heard from a hundred feet," (¶50). It alleges that no officer, at any point, told Mr. Acevedo his volume was the problem. (¶68). It alleges that Sgt. Zatora ordered Mr. Acevedo to cease amplification "irrespective of volume." (¶175). And it alleges the custom under which he acted: misapplying the ordinance "to prohibit all amplified religious speech... regardless of volume." (¶131). The manner of Mr. Acevedo's expression—his amplification—is pleaded throughout as the object of the defendants' conduct.

9

28.     Amplification is not unprotected conduct standing beside protected speech. It is a manner of protected speech, and the manner of protected speech is itself within the First Amendment, subject only to narrowly tailored time, place, and manner regulation. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). An objection to the manner of protected expression is therefore an objection to protected activity. It is not a content-neutral fact lying outside the retaliation inquiry.

29.     The Court held otherwise by narrowing the pleading. It cited the Amended Complaint's ¶¶ 120–21, 173, and 176, found that Mr. Acevedo "describes the activity pertinent to his First Amendment retaliation claim as the content of his speech, not the manner in which he was communicating it," and announced that it would "analyze[ ] the remainder of his First Amendment retaliation claim with that understanding." Dkt 87 at 19.

30.     From that understanding the rest was foreclosed. Having defined the protected activity solely as content, the Court found the defendants' amplification objection directed at manner, placed manner outside the protected activity, and concluded that content did not motivate the arrest. The result was produced by the definition. Once amplification is set outside the protected activity, no objection Sgt. Zatora voiced could connect to protected activity, and causation fails.

31.     At the pleading stage, the Court may not construct a definition against the pleader by reading the complaint down to its narrowest framing. The protected activity is fixed by what the complaint pleads, read as a whole, not by which paragraphs the Court elects to credit. The complaint pleads both the content of Mr.

10

Acevedo's speech and its manner, and the Court was obliged to credit both.

32.     Footnote 3  to the Court's opinion (Dkt 87 at 19 n.3) confirms the error rather than cure it. The Court drew on the *Monell* allegations to support its content-only reading, citing paragraphs 104 and 109 through 110 for the proposition that the defendants objected to viewpoint "regardless of amplification." But those allegations plead that the defendants focused on amplification as the means of suppressing the disfavored expression—the custom of "misapplying the noise ordinance to prohibit... amplified religious speech... regardless of volume." Dkt 64 at ¶131. The complaint joins viewpoint and amplification; the footnote took the viewpoint half and discarded the other. That is the resolution of a relationship between pleaded facts in the movant's favor, which Rule 12(b)(6) forbids.

33.     Read whole, the complaint alleges that Sgt. Zatora's objection to the amplification was not a lawful justification for the arrest but the very act of suppression—an objection aimed at protected expression. Whether that allegation is ultimately borne out is a question for another day. At the pleading stage it was entitled to be credited, and it was not.

Respectfully submitted,

ETHAN ACEVEDO

/s/ *Robin Rubrecht*

One of Plaintiff's attorneys

John W. Mauck (1797328)
Robin J. Rubrecht (6340970)
**MAUCK & BAKER, LLC**
1 N. LaSalle St. Suite 3150
Chicago, IL 60602

11

312-726-1243
jmauck@mauckbaker.com
rrubrecht@mauckbaker.com
Attorneys for Plaintiff